**In re James L. "Jim" BARR, Judge, 337th Judicial District Court of Texas.**

**No. 67.**

Review Tribunal, Appointed by Supreme Court of Texas.

Feb. 13, 1998.

Opinion Overruling Rehearing March 1, 1999.

Robert Flowers, David Zimmerman, Austin, Attorneys for Petitioner, State Commission on Judicial Conduct.

George J. Parnham, Wendell A. Odon, Jr., Houston, Attorneys for Respondent, James L. "Jim" Barr.

## *OPINION*

Chief Justice RICHARD BARAJAS, delivered the opinion of the Review Tribunal in which Chief Justices CORNELIUS, RAMEY and DAVIS, and Justice STOVER, join.[1]

This action results from the recommendation by the State Commission on Judicial Conduct that Respondent, James L. "Jim" Barr, be removed as Judge of the 337th Judicial District Court of the State of Texas, and further, that he be prohibit-

---

1. The Review Tribunal was composed of Hon. William J. Cornelius, Chief Justice, Sixth Court of Appeals, Texarkana, designated Presiding Justice; Hon. Tom B. Ramey, Jr., Chief Justice, Twelfth Court of Appeals, Tyler; Chief Justice Richard Barajas, Eighth District Court of Appeals, El Paso; Hon. Rex Davis, Chief Justice, Tenth Court of Appeals, Waco; Hon. Dixon W. Holman, Justice, Second Court of Appeals, Fort Worth; Hon. Carolyn Wright, Justice, Fifth Court of Appeals, Dallas; Hon. Earl Stover, Justice, Ninth Court of Appeals, Beaumont.

ed from holding judicial office in the future.[2] Judge Barr has rejected the findings, conclusions, and recommendations of the Commission, and in response, challenges the findings and ultimate recommendation that he be removed from office. We affirm the Commission's findings in part, reverse in part, and affirm the ultimate recommendation of removal.

## I. SUMMARY OF THE EVIDENCE

The comprehensive record in the instant case reflects that the State Commission on Judicial Conduct adopted the findings of fact which were entered by a Special Master. The Special Master found that Judge James L. "Jim" Barr engaged in willful or persistent conduct that is clearly inconsistent with the proper performance of his duties, in violation of TEX. CONST. art. V, § 1–a(6)A (1993), and further, that Judge Barr willfully violated various provisions of the Texas Code of Judicial Conduct. See TEX.CODE JUD. CONDUCT (1993), reprinted in TEX.GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon 1997). Among other things, the Special Master specifically found that Judge Barr, through sexual comments and gestures, violated the constitution of the State of Texas and the Texas Code of Judicial Conduct, in motioning to an assistant district attorney, from the bench, by crooking his index finger as if he wanted her to approach, and stating to her, "I just wanted to see if I could make you come [reach an orgasm] with one finger;" in telling an assistant district attorney who sought to return to her office while a jury deliberated that "[Y]ou are so nice to look at, if you leave, all I'll have to look at all afternoon are swinging dicks;" in telling an assistant district attorney that she must be on her period, reasoning that "[W]omen always carry around their purse when they're on their period;" and, in stating that a certain attorney could "go screw

himself" in response to an attempt to reset a criminal case. The Special Master further found that Judge Barr, throughout his tenure on the bench, has periodically referred to assistant district attorneys who are female as "babes."

The Special Master further found that Judge Barr willfully ordered that a writ of attachment be issued to bring a sheriff's deputy before him at a time that neither the prosecution nor defense had requested that such a writ be issued nor filed an affidavit that the sheriff's deputy was a material witness in a criminal case. The Special Master also found that Judge Barr willfully and verbally instructed that the sheriff's deputy be taken into custody without the benefit of having reviewed the recitations contained in both the subpoena and writ of attachment; and, that such action was contrary to established provisions of the United States Constitution and the constitution of the State of Texas. The Special Master found that Judge Barr willfully set bail for the sheriff's deputy at $50,000 with the intent that the deputy spend time in jail in the absence of receiving evidence as to the deputy's financial condition. The Special Master found that Judge Barr willfully excluded the sheriff's deputy's counsel from being present with his client as his client was being addressed by the Judge from the bench.

The above findings, among others, and the supporting evidence will be detailed in the discussion of each of Respondent's issues presented for review.

## II. PROCEDURAL HISTORY

The record in the instant case establishes that on December 19, 1996, Judge James L. "Jim" Barr, Respondent, was served with Notice of Formal Proceedings. On January 28, 1997, upon request of the Commission, the Texas Supreme Court ap-

---

2. On October 23, 1997, the Supreme Court appointed a Review Tribunal to review the recommendation of the State Commission on Judicial Conduct that Judge Barr be removed from office and prohibited from holding judi-

cial office in the future. The action was brought in accordance with TEX CONST. art. V, § 1–a (1993) and the TEX.R.REM'L/RET. JUDGES, 56 Tex.B.J. 823 (1993), promulgated by the Texas Supreme Court on May 22, 1992.

pointed the Honorable Noah Kennedy as Special Master to hear evidence on the charges and report thereon to the Commission. In March 1997, a formal hearing on the merits was conducted before the Special Master at the South Texas College of Law, Houston, Texas. On April 14, 1997, the Special Master filed his initial findings of fact with the Commission in which he concluded that a preponderance of the evidence showed Judge Barr to have engaged in judicial misconduct, as alleged. On May 2, 1997, the Commission requested that the Special Master make findings concerning the "willfulness" of Judge Barr's conduct. The Commission also requested that the Special Master conduct a hearing to make findings concerning additional alleged misconduct which was said to have occurred on April 22, 1997. Subsequent to the initial hearing, the Commission amended its original Notice of Formal Proceedings. On September 11 and 12, 1997, a second evidentiary hearing was conducted. On September 19, 1997, the Special Master made additional findings of fact, and supplemental findings on September 23, 1997. On October 9, 1997, the Commission agreed with and affirmed the Special Master's findings of fact. On October 13, 1997, the Commission petitioned the Supreme Court for appointment of a Review Tribunal and this panel was announced on October 23, 1997. Thereafter, on October 24, 1997, the State Commission on Judicial Conduct filed its findings and conclusions with this Review Tribunal seeking review of its recommendation that Respondent be removed from office, and further, that he be prohibited from holding judicial office in the future.

### III. *DISCUSSION*

In a civilized society, members of the judiciary are significant public figures whose authority necessarily reaches all points within their respective jurisdiction, if not beyond. Members of the judiciary of the State of Texas, whether a municipal judge in Fort Stockton, a justice of the peace in Cameron County, the county court at law judge in Liberty County, a state district judge in Ozona, a justice on the Sixth Court of Appeals, Texarkana, or the Chief Justice of the Texas Supreme Court, all serve as the collective guidon of the banner representing fairness and impartiality in our state. It is for that reason, plus others, that the judiciary must nurture and maintain respect for their decisions, as well as the judiciary of the State of Texas as a whole. The Texas jurist must be held to the highest standards of integrity and ethical conduct, much more so than the standards to which members of the executive and legislative branches are held accountable. Consequently, the ultimate standard for judicial conduct in the State of Texas must be more than effortless obedience to the law, but rather, must be conduct which constantly reaffirms one's fitness for the high responsibilities of judicial office and which continuously maintains, if not furthers, the belief that an independent judiciary exists to protect the citizen from both government overreaching and individual self-help.

In the instant case, Respondent advances six reasons why this Review Tribunal should reverse the findings of the Special Master and ultimately the State Commission on Judicial Conduct, and reject the Commission's recommendation that he be removed.[3] Specifically, Respondent suggests that the evidence is insufficient to establish a showing of "willful" violations of the constitution of the State of Texas and the Texas Code of Judicial Conduct; that the Commission unconstitutionally and incorrectly interpreted Texas law in its finding of "willful" violations against the Respondent; that

---

**3.** We address Respondent's Reasons to Reject as points of error with subpoints where necessary. The issues are framed as follows: Point of Error No. One, Sufficiency of Evidence to Establish "Willful" Violations; Point of Error No. Two, Constitutional Challenges; Point of Error No. Three, Judicial Behavior: Recommended versus Prohibited; and Point of Error No. Four, Challenges to Removal Recommendation.

the application of the Texas Code of Judicial Conduct and law to Respondent is unconstitutional for reasons of overbreadth and vagueness; that the Commission found violations of the Texas Code of Judicial Conduct for recommended behavior, rather than prohibited behavior; that the Commission's findings violate Respondent's right to freedom of speech and expression; and, that the recommendation of removal is inappropriate.

### A. Procedural Standards

 Judicial conduct proceedings brought in accordance with the constitution of the State of Texas and established rules for the removal or retirement of judges, are neither criminal nor regulatory, but rather are civil in nature. Their purpose is not necessarily to punish, but to maintain the honor and dignity of the judiciary of the entire State of Texas and to uphold the administration of justice for the benefit of all its citizens. *See In re Thoma*, 873 S.W.2d 477, 484–85 (Tex.Rev. Trib.1994). The burden was upon the Examiner for the State Commission on Judicial Conduct to establish, before the Special Master, the allegations against Judge Barr by the civil standard of preponderance of the evidence. *Thoma*, 873 S.W.2d at 485; *see also In re Brown*, 512 S.W.2d 317, 319–20 (Tex.1974). In that regard, to the extent that they do not conflict with the RULES FOR REMOVAL OR RETIREMENT OF JUDGES, the civil rules of procedure, both trial and appellate, are applicable. TEX.R. REM'L/RET. JUDGES, 56 Tex.B.J. 823 (1993), Rules 10(d), 12(e) and (g). Moreover, during the course of any hearing conducted in the furtherance of formal proceedings, whether before a special master or the Commission, only legal evidence is to be received.[4] *Thoma*, 873 S.W.2d at 485; TEX.R.REM'L/RET. JUDGES, Rule 10(e). Absent a statement of objections to the report of the special master, the Commission may adopt the findings of the special master as its own. *Thoma*, 873 S.W.2d at 485; TEX.R.REM'L/RET. JUDGES, Rule 10(j). The findings of the special master, as adopted by the Commission, are tantamount to findings of fact filed by a trial judge in a trial without a jury, and as a result, we review such findings in that light. *Thoma*, 873 S.W.2d at 485. The record in this case shows that the State Commission on Judicial Conduct overruled Respondent's Objections to the Findings of Fact filed with the Commission on October 7, 1997, and adopted and affirmed the Findings of Fact of the Special Master, including the Special Master's supplemental letter of September 23, 1997, in their entirety.

The extensive record in the instant case includes a reporter's record. Consequently, the Commission's adopted findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the legal and factual sufficiency of the evidence supporting findings in a civil case, either by a trial court or by a jury. *Id.*, (citing *Cullen Ctr. Bank & Trust v. Texas Commerce Bank*, 841 S.W.2d 116, 121 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Green Tree Acceptance, Inc. v. Holmes*, 803 S.W.2d 458, 461 (Tex.App.— Fort Worth 1991, writ denied)).

 A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*, (citing generally *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951)). As in appeals of civil matters, this Review Tribunal cannot substitute its findings for those of the Commission. If there is sufficient competent evidence of probative force to support the findings and recommendation, they must be sustained. *Id.*, (citing *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136

---

4. Inherent in the requirement that only legal evidence be received, is the procedural standard of requiring timely objections as well as other requirements for the proper preservation of error for review by a Review Tribunal.

(Tex.App.—El Paso 1992, writ denied)). It is not within the province of this Review Tribunal to interfere with the Commission's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. Where there is conflicting evidence, the findings of the Commission on such matters will be regarded as conclusive. *Id.*

In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the Commission's findings and disregard all evidence and inferences to the contrary. *Id.*, (*citing Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965)). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails.[5] *Id.* at 486.

### B. Issues Presented for Review

#### 1. Sufficiency of the Evidence to Establish "Willful" Violations

Judge Barr contends that the State Commission on Judicial Conduct improperly found that he "willfully" violated the provisions of the Texas Code of Judicial Conduct because his "off-color," lewd and sexually explicit remarks cannot be "willful" because they were not made in bad faith but rather were made in a context absent applicable standards; and, that his actions relating to the issuance to his orders cannot be "willful," as that term is legally defined and as it pertains to the Texas Constitution, since his actions were lawful.[6]

Respondent maintains that the Special Master erred, as did the Commission, in relying upon a *segment* of the definition of "willful" as contained in *Thoma*. We disagree.

The term "willful," in the context of removal of members of the Texas judiciary for misconduct, has been defined as follows:

[T]he term "willful," as applied in TEX. CONST. art. V, § 1–a(6)A, is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross indifference to his conduct.

*Thoma*, 873 S.W.2d at 489–90. As noted in *Thoma*, willfulness involves more than an error of judgment or a mere lack of diligence. By way of further exposition, the *Thoma* Review Tribunal additionally noted that "willfulness" necessarily encompasses conduct involving moral turpitude, dishonesty, corruption, misuse of office, or bad faith generally, whatever the motive. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority may in and of itself constitute bad faith. *Id.* A judge acts intentionally, or with intent, when the act is done with the conscious objective of causing the result or of acting in the manner defined in the pertinent rule of conduct. *See In re Conduct of Schenck*, 318 Or. 402, 870 P.2d 185, 189 (1994). Gross indifference is indifference that is flagrant, shameful and beyond all measure and allowance. It is such conduct, particularly by members of the judiciary, that is not to be excused. A judge is subject to discipline for "willful" violation of any canon of judicial conduct

---

5. Respondent, citing no authority, persuasive or otherwise, suggests that this Review Tribunal should abandon the recognized standards of review of legal and factual sufficiency of the evidence and instead adopt a "just and proper" standard in determining the merits of the Respondent's removal from office. We decline Respondent's invitation to adopt such a vague and cloudy standard, instead electing to hold Texas jurists to a higher, more clearly defined, uniform standard.

6. Respondent, *citing Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979), contends that his actions could not be "willful" since the judiciary has the inherent power to issue orders and take necessary legal action in order to fulfill judicial responsibilities imposed upon a judge by the Constitutions of the United States and the State of Texas. Additionally, Respondent maintains that any orders which he issued were legal, hence not violative of the Texas Code of Judicial Conduct as a matter of law.

as long as she or he intends to engage in conduct for which she or he is disciplined, whether or not she or he has specific intent to violate the canon. *See In re Flanagan*, 240 Conn. 157, 690 A.2d 865 (1997).

### a) Sexually Offensive Comments and Gestures

We must note that the specific matters before this Review Tribunal as they relate to Judge Barr's sexually offensive comments and gestures are not whether his behavior constituted "sexual harassment" as such. Likewise, we do not address whether Judge Barr's comments and gestures were inadvertent expressions of unconscious juvenile prejudices or the result of an ingrained pattern of speech. We acknowledge, without hesitation, that while all forms of behavior that cross the legal threshold of sexual harassment would constitute judicial misconduct, many forms of offensive interpersonal behavior that would otherwise violate the Texas Code of Judicial Conduct may not meet the legal definition of sexual harassment. Nonetheless, while we address the issues of whether Judge Barr's lewd and offensive comments and gestures violated the Texas Code of Judicial Conduct, we note that the charges of misconduct against him do equate to a form of sexual harassment.

Gender bias in general, and sexual harassment in particular, is personally offensive, extraordinarily invasive, psychologically damaging, and deeply embarrassing to the intended victim. *See In the Matter of Seaman*, 133 N.J. 67, 627 A.2d 106, 110 (1993). It is insulting, belittling, and inappropriate in an exchange between a judge and attorney and is to be condemned for the simple reason that it is wrong. Sexual harassment in the administration of justice is harmful and offensive conduct which clearly indicates a lack of respect for the judge's victim, and, by reasonable extension, a lack of respect for the citizens of the State of Texas at large.

*See* Jeffrey M. Shaman et al., Judicial Conduct and Ethics, § 10.28 (2d ed.1995).

■ For the above reasons, this Review Tribunal has chosen to maintain the anonymity of the various complainants by referring only to their initials, despite the fact that the charges against Judge Barr have become public and the privacy of each of the complainants has been shattered. Charges of judicial misconduct are ordinarily made public when found in formal proceedings brought by the Texas Judicial Conduct Commission. The Texas Judicial Conduct Commission followed conventional practice and used the full names of each of the complainants in its notice of formal proceedings, and ultimately in its petition for removal. In the future, we urge that disciplinary cases involving abuse of the judicial office through sexual harassment, or other activities that serve to humiliate or degrade those with whom a judge comes into contact, should preserve the anonymity of the alleged victim. The purpose behind that practice is to protect the victim's privacy and encourage reporting of such offenses. *See Seaman*, 627 A.2d at 110.

■ Many of the findings which form the general background to the events that are the subject of the complaint against Respondent are not controverted nor materially disputed.[7] The record in the instant case establishes, and Respondent concedes, the following finding of the Special Master and ultimately the Commission:

> Throughout Judge Barr's tenure on the bench, he has periodically addressed the female Assistant District Attorneys in his court as "babes."

In a permissive society, it is irrelevant whether a judge's conduct or speech is no different from that of the "ordinary person," since improper conduct which may be

---

7. Respondent openly acknowledges the inappropriateness of the contents of those matters made the basis of comments and gestures.

He further notes that he has apologized to the women involved "regardless of whether or not they were offended" by his remarks.

overlooked when committed by the ordinary person, even an attorney, cannot be overlooked when committed by a member of the Texas judiciary. *See Cincinnati Bar Ass'n v. Heitzler*, 32 Ohio St.2d 214, 291 N.E.2d 477, 482 (1972), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973). By seeking and accepting the responsibilities of the office of judge, regardless of the level of office, a judge undertakes to conduct herself or himself both officially and personally in accordance with the highest standards that the citizens of Texas can expect. *See id.*

On June 12, 1991, the Supreme Court of Texas entered an order creating a task force to study gender bias in the Texas legal system. The formation of the Gender Bias Task Force of Texas was prompted by increasing national concern over the treatment of women in our nation's courts, both as litigants and as legal professionals. GENDER BIAS TASK FORCE OF TEXAS, FINAL REPORT, at 1 (1994). Women in the courts in any capacity may find themselves subjected to inappropriate, overly familiar and demeaning forms of address, comments on their appearance, their clothing, and their bodies, sexist remarks and jokes, and unwelcome verbal and physical advances.[8] WOMES IN THE LAW § 15.04[1] (C.H. Lefcourt ed., Release # 2, July 1988); JEFFREY

M. SHAMAN ET. AL., JUDICIAL CONDUCT AND ETHICS, § 3.09 (2d ed.1995).

In the instant case, Judge Barr does not contest the factual finding nor the finding of willfulness, that throughout his tenure on the bench, which dates to 1988, he has periodically addressed the female Assistant District Attorneys in his court as "babes." While we need not define "babe" in its most derogatory and sexist sense,[9] we note that at a minimum, it connotes a young girl and/or a naive and inexperienced person. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 83 (10th ed.1997). Given the above, we find Judge Barr's sexist manner in addressing female Assistant District Attorneys in his court as "babes" to be inappropriate because it undermines an attorney's role in the judicial process by indicating that she is not to be taken seriously and thus jeopardizes the proper administration of justice by hindering the female attorney from properly representing her client, in this case, the State of Texas. We find that Judge Barr's admitted actions in addressing female prosecutors as "babes" were willful conduct that was clearly inconsistent with the proper performance of his duties, cast public discredit upon the judiciary of the State of Texas, as well as on the administration of justice, and thus are violative of Article V, Section 1–a(6)A of the Texas Constitution[10]

8. The Supreme Court of Texas Gender Bias Task Force reported that two-thirds of the female members of the State Bar of Texas who reported discriminatory behaviors reported problems with male judges, primarily in terms of inappropriate forms of address. One out of three reported that they felt that they received less respect from judges because they are women. GENDER BIAS TASK FORCE OF TEXAS, FINAL REPORT, at 30.

9. One need only casually search the Internet through its various search engines, utilizing the query "babes," to discover with consternation the pandemic use of the offending word in its most vile and sexually explicit sense. *See Yahoo!, AOL Netfind, Lycos, InfoSeek, Hotbot, and WebCrawler.* A sensitized and enlightened Texas judiciary has come to realize that such derogatory forms of address are irrational and unjust, and has seriously

taken strides to abandon such references which were once tolerated and which are now considered demeaning and clearly offensive. *See* TEXAS SUPREME COURT GUIDELINES FOR GENDER-NEUTRAL COURTROOM PROCEDURES, MISC. Docket No. 96–9276 (Tex.1996).

10. Article V, Section 1–a(6)A provides in pertinent part as follows:

Any Justice or Judge of the courts established by this Constitution or created by the Legislature as provided in Section 1, Article V, of this Constitution, may, subject to the other provisions hereof, be removed from office for willful or persistent violation of rules promulgated by the Supreme Court of Texas, incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper perfor-

and Canons 3B(3),[11] (4),[12] and (6)[13] of the Texas Code of Judicial Conduct.

The record in the instant case establishes, and Judge Barr concedes, the additional findings of the Special Master and ultimately the Commission:

In November 1995, while presiding over a criminal trial, Respondent was approached by an Assistant District Attorney, Ms. L.D., to be allowed to return to her office while the jury was deliberating. Respondent, in replying to her request, stated, "You are so nice to look at, if you leave, all I'll have to look at all afternoon is swinging dicks."

In 1995 Respondent hosted a Christmas party for his court personnel. The party took place at Respondent's residence. At the party, Respondent motioned to an Assistant District Attorney, Ms. K.A., by crooking his index finger as if he wanted her to approach. Upon approaching, Respondent stated to her, "I just wanted to see if I could make you come [reach sexual orgasm] with one finger."[14] The Assistant District Attorney was present at Respondent's residence for the party by virtue of her official relationship with the court.

At the same Christmas party 1995, Respondent approached an Assistant District Attorney, Ms. L.D. and asked her if she was leaving the party. When Ms. L.D. replied in the negative, Respondent stated, "Well, then you must be on your period. Women always carry around their purses when they're on their period." The Assistant District Attorney was present at Respondent's residence for the party by virtue of her official relationship with the court.

Shortly after the Christmas party, in January 1996, during a break in a criminal trial over which Respondent presided, Respondent motioned to yet another Assistant District Attorney, Ms. S.R., by crooking his index finger as if he wanted her to approach. Upon approaching, Respondent stated to her, "I just wanted to see if I could make you come [reach sexual orgasm] with one finger," and then laughed.

Once again, we note that Judge Barr, has conceded the inappropriateness of each of the above loathsome and wretched comments, including his willfulness of voicing such comments, and has purportedly apologized to his victims, "regardless of whether or not they were offended" by his remarks. Judge Barr's statements in each of the above accounts confound judicial reason and are the antithesis of judicial discretion. Of greater concern is the fact that on each of the four occasions shown above, the victims of his comments were women who had to appear in his courtroom or were otherwise under his supervision. Comments made to Assistant District Attorneys L.D. and S.R. were made during the course of judicial proceedings, i.e., during the course of a criminal trial while taking a break, and while a jury was deliberating a citizen's freedom. It is not material to the issues raised in the instant case whether Judge Barr's disgusting and repulsive comments reflect a misguided sense of humor, an insecurity, an inability

---

mance of his duties or casts public discredit upon the judiciary or administration of justice.... TEX. CONST. art. V, § 1–a(6)A (1993).

11. "A judge shall require order and decorum in proceedings before the judge." TEX.CODE JUD. CONDUCT, Canon 3, subd. B(3)(1993).

12. "A judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity...." TEX.CODE JUD. CONDUCT, Canon 3, subd. B(4)(1993).

13. "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon ... sex...." TEX.CODE JUD. CONDUCT, Canon 3, subd. B(6)(1993).

14. Respondent's comment above is an obvious, but tasteless crude sexual reference with a double entendre. A "double entendre" is a word or expression capable of two interpretations with one usually risque. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 347 (10th ed.1997).

to relate on an acceptable basis with individuals of the opposite sex, or some other maladjustment. It is not material that we feel a sense of sadness and appreciate the tragic consequences of his lack of social graces, judicial propriety and judicial restraint. Judge Barr's conduct not only diminishes his dignity, but also the public's respect for the judiciary of the State of Texas as a whole. This flaw in Judge Barr's judicial temperament is inconsistent with service as a jurist in the State of Texas.

We find that Judge Barr's actions shown above constituted intentional and willful conduct, as admitted. The actions of Judge Barr, taken together, were violative of Canons 3B(3),(4), and (6) of the Texas Code of Judicial Conduct, were clearly inconsistent with the proper performance of his duties, cast public discredit upon the judiciary of the State of Texas as well as on the administration of justice and thus are likewise violative of Article V, Section 1–a(6)A of the Texas Constitution.

 Finally, the Special Master found, and the Commission ultimately adopted the following two findings:

In January 1996, during the trial of a criminal case, an Assistant District Attorney, Ms. S.R., questioned a witness asking whether he had seen any evidence of another individual being capable of fabrication or lying. Respondent sustained a defense objection to the question. Ms. S.R. then asked the witness the following question: "In your treatment of her and the knowledge that you have of her and her life and family, have you developed an opinion as to her character for being truthful." Respondent immediately asked counsel to approach the bench at which time he leaned forward toward the Assistant District Attorney and stated, "I can't believe you just asked that question. I feel like coming across the bench and slapping the crap out of you."

Respondent had occasion to preside over a case in which one of the parties was represented by a local attorney, Mr. K.S.S. The case had been set for hearings on more than one occasion, and on the particular date in point, Mr. K.S.S. did not appear in court, but instead sent one of his associates to attempt to reset the case. After a discussion at the bench, the associate related a remark made by Mr. K.S.S. about the court, to which Respondent replied, from the bench, "[Mr. K.S.S.] can go screw himself...." Respondent's comment was quoted in an article appearing in the *Texas Lawyer.*

In reviewing the above, the Special Master found, and the Commission adopted such findings, that Respondent violated Canons 3B(3) and (4). As noted earlier, Canons 3B(3) and (4) provided in pertinent part as follows:

**B. Adjudicative Responsibilities.**

. . . . .

(3) A judge shall require order and decorum in proceedings before the judge.

(4) A judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity....

. . . . .

We recognize and take great pride in acknowledging the ethnic, cultural, racial and gender diversity which is found among members of the Texas judiciary. Given that diversity, the proper administration of justice must allow for the personal imprint that judges place on court facilities which they oversee. While we recognize that a judge shall require order and decorum in proceedings before the court, and shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity, we are ever mindful that judicial accountability does not require that judges be mere robots or be of precisely the same character with precisely the same personal qualities and attitudes.

There must always be room in the judiciary of the State of Texas, which serves a pluralistic society, for differences in judicial style. There must always be room for the colorful judge as well as the more conventional judge. Differences in style and personality do not of themselves suggest misconduct. To the end that a courtroom may truly be a temple of justice and not the personal domain of the woman or man who happens to be presiding, any differences in style must always result in justice administered according to law and must be in accord with minimum standards of propriety. *See In the Matter of Ross,* 428 A.2d 858, 861 (Me.1981). Canons 3B(3) and (4) of the Texas Code of Judicial Conduct seek to set those minimum standards. Judge Barr has fallen short.

In each of the final two circumstances, Respondent concedes the underlying facts which form the basis of this complaint. Moreover, on review, Respondent specifically notes that he regrets the language used and at least with respect to the comments made to the Assistant District Attorneys, he has acknowledged that the individuals were personally offended and has apologized. However, Respondent does contest the finding of "willfulness" in each of the final two circumstances, and asks this Review Tribunal to excuse his conduct given the circumstances within which the comments were made.

With respect to the incident of January 1996 wherein Judge Barr leaned forward toward the Assistant District Attorney and stated, "I can't believe you just asked that question. I feel like coming across the bench and slapping the crap out of you," Respondent suggests that the remarks were merely a rebuke. We disagree.

As noted above, the term "willful," in the context of removal of members of the Texas judiciary for misconduct, has been defined as follows:

[T]he term "willful," as applied in TEX. CONST. art. V, § 1–a(6)A, is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross indifference to his conduct. *Thoma,* 873 S.W.2d at 489–90. Since Judge Barr has admitted the underlying conduct, we need not determine whether he acted intentionally, or with intent. Respondent effectively has admitted that the acts, i.e., the comments, were spoken with the conscious objective of attempting to rebuke the District Attorney. Respondent is susceptible to discipline for "willful" violations of Canons 3B(3) and (4) in the instant case as long as he intended to engage in conduct for which he is disciplined, whether or not he formed the specific intent to violate those canons. *See In re Flanagan,* 690 A.2d at 865.

Members of the judiciary have been disciplined for engaging in discourteous conduct toward attorneys. The discourteous conduct may be categorized, for analytic purposes, as primarily (1) impatient, (2) vindictive, (3) undignified, and (4) sarcastic. JEFFREY M. SHAMAN ET AL., JUDICIAL CONDUCT AND ETHICS, § 3.03 (2d ed.1995).

In the instant case, the record shows that Judge Barr's comment to Assistant District Attorney S.R. occurred during the course of a criminal trial at a bench conference outside the hearing of the jury. The Assistant District Attorney had previously asked a question to which a defense objection had been sustained. The record indicates that the Assistant District Attorney proceeded to ask the same question, albeit in a different form, that was likewise improper. While judges do enjoy inherent power to issue orders and take the necessary legal action in order to fulfill judicial responsibilities, that power and authority is not unbridled. Respondent's comment, "I can't believe you just asked that question. I feel like coming across the bench and slapping the crap out of you," displays impatience and disrespect to a member of the bar, and of greater significance potentially has a chilling effect on an attorney's representation of her or his client and may interfere with that attorney's right to be heard according to law. We decline to

extend a judge's inherent power to this extreme and find Judge Barr's comments to be both intentional and willful.

With respect to the final incident, i.e., Judge Barr's comment from the bench that "[Mr. K.S.S.] can go screw himself," Respondent suggests that the remark was not meant to be offensive in any way, but rather a statement made in jest. As noted above, Respondent is susceptible to discipline for "willful" violations of the Texas Code of Judicial Conduct so long as he intended to engage in conduct for which he is disciplined, whether or not he formed the specific intent to violate those canons. It is immaterial that Judge Barr may have perceived his offensive conduct as low-humored horseplay. Judge Barr has admitted the verbal transgression. Accordingly, we find his conduct to be both intentional and willful.

Each of the above comments uttered by Judge Barr represents an undignified and tasteless flaw possessed by a member of the judiciary of the State of Texas. Judge Barr's flaw intensifies when coupled with the fact that on September 15, 1994, he openly admitted to the State Commission on Judicial Conduct to his use of profane, vulgar, and demeaning language as a means of getting or keeping the attention of certain individuals. The Commission, in noting that such language from the bench does not engender respect for the judiciary or the administration of justice, privately warned Judge Barr that his use of profane or vulgar words was not appropriate for the bench in open court.

Judges have extraordinarily little interest in the use of insulting, degrading, vile, and sexist language, while the public interest in judicial dignity and impartiality is correspondingly high. Thus, in the instant case, Judge Barr's right to insult and demean is necessarily outweighed by the public interest to demand dignity. His comments under each of the above circumstances constituted intentional and willful conduct that was clearly inconsistent with the proper performance of his duties, cast public discredit upon the judiciary of the State of Texas as well as on the administration of justice and thus his conduct is violative of Article V, Section 1–a(6)A of the Texas Constitution and Canons 3B(3), (4), and/or (6) of the Texas Code of Judicial Conduct as discussed relative to the above instances.[15]

We have examined only the evidence that tends to support the Commission's findings of willfulness as to Respondent's sexual comments and gestures, and have disregarded all evidence and inferences to the contrary. In applying the above no evidence standard, we find that there is more than a scintilla of evidence to support the questioned findings in each of the above paragraphs. Respondent's no evidence challenge fails as to all of the above findings and his complaint overruled.

Furthermore, we have examined all of the evidence in determining whether the questioned findings of willfulness as to Respondent's sexual comments and gestures are so against the great weight and preponderance of the evidence as to be manifestly unjust. Given the evidence, in particular his admissions, we find that there is abundantly sufficient, competent evidence of probative force to support the Commission's findings as to each allegation. We overrule Respondent's factual sufficiency claim.

### b) Improper Exercise of Judicial Process

██ In Point of Error No. One, Respondent contends that the evidence is both legally and factually insufficient to support the Special Master's Findings, and ultimately the Commission's Findings that

---

15. We note that in addition to the sexual comments and gestures discussed above, Respondent is alleged to have stated to attorneys for Harris County Sheriff's Deputy Paul Rendon, after their attempt to secure the Deputy's release from confinement that "I don't want to be a big asshole. I only want to be a small asshole." Respondent's conduct in that regard is discussed more fully in this opinion.

he willfully violated TEX. CONST. art. V, § 1–a(6)A (1993), and TEX.CODE JUD. CONDUCT, Canon 2A and Canons 3B(3), 3B(4) and 3B(8)(1993). Specifically, Respondent contends that the judiciary has inherent power to issue orders and take necessary legal action in order to fulfill its judicial responsibilities, and as a result, any orders which he issued are legal and not subject to disciplinary review.[16]

16. Respondent challenges the legal and factual sufficiency of evidence to support the following findings:

Item 1, Charge 1:

1. Judge Barr's action on or about January 17, 1996, in ordering that a Writ of Attachment be issued to bring Deputy Paul Rendon before his Court under the circumstances existing in the *Overturf* case at the time, was willful conduct that was clearly inconsistent with the proper performance of his duties, and violated Article V, Section 1–a(6)A of the Texas Constitution.

2. Judge Barr's action on or about January 17, 1996, in ordering that a Writ of Attachment be issued to bring Deputy Paul Rendon before his Court under the circumstances existing in the *Overturf* case at the time, was willful conduct that cast public discredit upon the judiciary or the administration of justice, and violated Article V, Section 1–a(6)A of the Texas Constitution.

3. Judge Barr's action on or about January 17, 1996, in ordering that a Writ of Attachment be issued to bring Deputy Paul Rendon before his Court under the circumstances existing in the *Overturf* case at the time, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(4), which provides, in pertinent part, "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity...."

Item 1, Charge 2

1. Judge Barr's action on or about January 17, 1996, in setting a $50,000 witness bail in connection with his attachment of Deputy Paul Rendon, was willful conduct that was clearly inconsistent with the proper performance of his duties, and violated Article V, Section 1–a(6)A of the Texas Constitution.

2. Judge Barr's action on or about January 17, 1996, in setting a $50,000 witness bail in connection with his attachment of Deputy Paul Rendon, was willful conduct that cast public discredit upon the judiciary or the administration of justice, and violated Article V, Section 1–a(6)A of the Texas Constitution.

3. Judge Barr's action on or about January 17, 1996, in setting a $50,000 witness bail in connection with his attachment of Deputy Paul Rendon, was willful conduct that violated the Code of Judicial Conduct, Canon 2A, which provides, in pertinent part, "A judge shall comply with the law...." (specifically, by failing to comply with Article 1, Section 13 of the Texas Constitution [prohibiting the requiring excessive bail], and with Articles 17.15, 24.24, and 24.25 of the Texas Code of Criminal Procedure).

4. Judge Barr's action on or about January 17, 1996, in setting a $50,000 witness bail in connection with his attachment of Deputy Paul Rendon, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(4), which provides, in pertinent part, "A judge shall be patient, dignified and courteous to litigants, jurors, lawyers and others with whom the judge deals in an official capacity...."

Item 1, Charge 3:

1. Judge Barr's action on or about January 17, 1996, in instructing that Deputy Paul Rendon be taken into custody, without having personally reviewed the factual and legal adequacy of the recitations in the "Subpoena" and the Writ of Attachment issued to secure Deputy Rendon's presence, was willful conduct that was clearly inconsistent with the proper performance of his duties, and violated Article V, Section 1–a(6)A of the Texas Constitution.

2. Judge Barr's action on or about January 17, 1996, in instructing that Deputy Paul Rendon be taken into custody, without having personally reviewed the factual and legal adequacy of the recitations in the "Subpoena" and the Writ of Attachment issued to secure Deputy Rendon's presence, was willful conduct that cast public discredit upon the judiciary or the administration of justice, and violated Article V, Section 1–a(6)A of the Texas Constitution.

3. Judge Barr's action on or about January 17, 1996, in instructing that Deputy Paul Rendon be taken into custody, without having personally reviewed the factual and legal adequacy of the recitations in the "Subpoena" and the Writ of Attachment issued to secure Deputy Rendon's presence, was willful conduct that violated the Code of Judicial Conduct, Canon 2A, which provides, in pertinent part, "A judge shall comply with the law...."

4. Judge Barr's action on or about January 17, 1996, in instructing that Deputy Paul Rendon be taken into custody, without having personally reviewed the factual and legal adequacy of the recitations in the "Subpoena" and the Writ of Attachment issued to secure Deputy Rendon's presence, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(8), which provides, in pertinent part, "A judge shall accord to every person who has a legal interest in a proceed-

The facts in the instant case, as found by the Special Master and adopted by the State Commission on Judicial Conduct, establish that on November 2, 1995, Brenton Ray Overturf, was indicted for the offense of aggravated robbery. The matter was assigned to the 337th Judicial District Court where Judge Barr was to preside. On November 15, 1995, a pretrial setting was established for the case to be heard in the 337th Judicial District Court on December 19, 1995. On December 5, 1995, a defense subpoena was issued for Harris County Deputy Sheriff Paul Rendon to appear in the 337th Judicial District Court on December 19, 1995 and to produce specified photographs. The subpoena did not bear the signature of the Harris County District Clerk or of any deputy clerk, judge or magistrate. A copy of the subpoena was furnished to Deputy Rendon the following day. Deputy Rendon failed to personally appear pursuant to the subpoena, as directed.[17] That same day, December 19, 1995, attorneys for the State and defense entered into an agreement resetting the *Overturf* case to January 17, 1996. The record establishes that while the attorneys agreed to the resetting of the case, Judge Barr had no personal knowledge of the agreement to reset. Between the dates of December 19, 1995 and January 17, 1996, the evidence was not produced, as requested.

On January 17, 1996, Respondent called for the *Overturf* case to be heard. At the hearing, defense counsel sought approval of a motion for discovery and a corresponding discovery order which requested, among other things, the previously sought-after photographs which were pur-

---

ing, or that person's lawyer, the right to be heard according to law."

Item 1, Charge 4

1. Judge Barr's conduct on or about January 17, 1996, in stating to Deputy Paul Rendon's attorney, W. Stacey Mooring and Paul Aman, that, "I don't want to be a big asshole, I only want to be a small asshole ...," was willful conduct that violated the the Code of Judicial Conduct, Canon 3B(3), which provides, "A judge shall require order and decorum in proceedings before the judge."

2. Judge Barr's conduct on or about January 17, 1996, in stating to Deputy Paul Rendon's attorneys, W. Stacey Mooring and Paul Aman that, "I don't want to be a big asshole, I only want to be a small asshole ...," was willful conduct that violated the Code of Judicial Conduct, Canon 3B(4), which provides in pertinent part, "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity...."

Item 1, Charge 5

1. Judge Barr's action, on or about January 18, 1996, in excluding Deputy Paul Rendon's attorney, Paul Aman, from being present with Deputy Rendon when Judge Barr addressed the Deputy from the bench, was willful conduct that was clearly inconsistent with the proper performance of his duties, and violated Article V, Section 1–a(6)A of the Texas Constitution.

2. Judge Barr's action, on or about January 18, 1996, in excluding Deputy Paul Rendon's attorney, Paul Aman, from being present with Deputy Rendon when Judge Barr addressed the Deputy from the bench, was willful conduct that cast public discredit upon the judiciary or the administration of justice, and violated Article V, Section 1–a(6)A of the Texas Constitution.

3. Judge Barr's action, on or about January 18, 1996, in excluding Deputy Paul Rendon's attorney, Paul Aman, from being present with Deputy Rendon when Judge Barr addressed the Deputy from the bench, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(4), which provides, in pertinent part, "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity...."

4. Judge Barr's action, on or about January 18, 1996, in excluding Deputy Rendon's attorney, Paul Aman, from being present with Deputy Rendon when Judge Barr addressed the Deputy from the bench, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(8), which provides, in pertinent part, "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."

17. Deputy Rendon testified that he had, in fact, called in to the 337th District Court on December 19th and was placed "on call" by Respondent's law enforcement staff member, Sheriff's Deputy James Phillips. The Special Master, however, found that the evidence in the instant case did not support Deputy Rendon's assertions on this issue.

portedly in the custody and control of Deputy Rendon. Upon being advised that the photographs had not been produced on December 19, 1995 pursuant to a defense *subpoena duces tecum,* Judge Barr advised his court clerk, as well as his process server, to issue a writ of attachment for Deputy Rendon, with a witness bond for the law enforcement officer set at $50,000.[18] Neither the defendant nor the State ever requested that the writ of attachment be issued nor that a witness bond be set for Deputy Rendon. Moreover, neither the State nor defense filed an application for a writ of attachment or other affidavit stating that Deputy Rendon was a material witness about to move out of Harris County, Texas. The *Overturf* case was then reset to January 30, 1996.

The writ of attachment, issued pursuant to Judge Barr's order, was signed by an individual who was not the Harris County District Clerk. It required that Deputy Rendon appear in the 337th Judicial Court at 9:00 a.m. on January 17, 1996; however, the writ was not signed until an hour after he was to appear. The writ of attachment refers to Deputy Rendon as the "defendant," rather than a witness. At approximately mid-morning on January 17, 1996, Deputy Rendon appeared in court, escorted by Sheriff's Deputy James A. Phillips, Respondent's process server. Although Judge Barr had not reviewed or made any determination of the factual or legal adequacy of either the subpoena or writ of attachment, Judge Barr then instructed that Deputy Rendon be immediately taken into custody. No hearing, formal or otherwise, was conducted to determine why Deputy Rendon was not in attendance on December 19, 1995 as subpoenaed, or to show good cause why he did not produce the requested photographs. Moreover, no hearing was conducted to determine the

Deputy's financial condition to post the required witness bond.

The record further shows that at approximately 1:30 p.m. on January 17, 1996, attorneys W. Stacey Mooring and Paul Aman, both representing Deputy Rendon, appeared before Respondent for the purpose of discussing the Deputy's confinement, the writ of attachment, and the witness bond. Judge Barr advised counsel that he would not withdraw the writ and release the Deputy from confinement nor would he lower the amount of the witness bond. Additionally, Judge Barr advised counsel that the writ of attachment and bond were being imposed for the purpose of making an example of Deputy Rendon to both the Harris County Sheriff's Department and the City of Houston Police Department. Of greater significance, however, were Respondent's comments to counsel that if they would not contest the writ of attachment and Deputy Rendon remained in jail overnight, he would withdraw the writ of attachment and release him from jail the following day. On the other hand, if the attorneys decided to contest the writ of attachment, he would set the *Overturf* case immediately, or continue the imposition of the writ and bond until January 30, 1996. The conference with Mooring and Aman concluded with Respondent callously telling counsel that he wanted Deputy Rendon to "smell the smells" and "feel what it is like to be in jail," that he didn't want to fine Deputy Rendon or hold him in contempt, stating "I don't want to be a big asshole, I want to be a small asshole," and that his desire was to "rub the department's and [Deputy Rendon's] nose in it to get the message across."

The record establishes, and the Special Master found, that Judge Barr would not change his mind regarding the action taken against Deputy Rendon, that he knew

---

**18.** The record shows that immediately after Respondent ordered that a writ of attachment be issued for Deputy Rendon, a bench conference took place between Respondent and counsel for both the defense and State. The

State suggested to Respondent that the defense had subpoenaed the wrong person to bring the requested photographs and that he simply was the first law enforcement officer named in the offense report.

that the $50,000 bond was unreasonable, but that he refused to hold a bond reduction hearing the same day as he wanted Deputy Rendon to remain in jail until the following day at which time he would consider a bond reduction, and finally, that Judge Barr admitted that he had not researched the law regarding writs of attachment or witness bonds, but would accept the consequences of his conduct.

As noted above, Respondent contends that the judiciary has inherent power to issue orders and take necessary legal action in order to fulfill its judicial responsibilities, and as a result, any orders which he issued are legal and not subject to disciplinary review. Thus, this case squarely presents an issue of first impression in Texas, i.e., under what circumstances may legal error by a judge constitute grounds for a finding of judicial misconduct.

■ There can be no greater threat to a free society than judicial anarchy which would certainly be realized through the continued erosion of judicial independence. It is that constant quest for independence that should prohibit the imposition of disciplinary action upon a judge for an incorrect ruling. The potential impact on the independence of the judiciary in the State of Texas cannot be overstated, for the preservation of an independent judiciary requires that judges not be exposed to personal discipline on the basis of case outcomes or particular rulings. Judicial independence is the cornerstone of our system of justice as is recognized in the Preamble to the Texas Code of Judicial Conduct, which states that "[o]ur legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us." TEX.CODE JUD. CONDUCT, PREAMBLE (1993). Furthermore, the provisions of the Code are intended to state basic standards which should govern the conduct of all judges and to provide guidance to assist judges in establishing and maintaining

high standards of judicial and personal conduct. *Id.* Consequently, we note that a truly independent judge is one who is able to rule as she or he determines appropriate, without any fear of political retaliation or disciplinary reprisals.

■ While mere legal error should best be left to the appellate courts of this State, rather than to the disciplinary process, that does not mean that legal error can **never** constitute judicial misconduct. Generally, there are three circumstances in which legal error may be found violative of one or more of the Canons. These circumstances are:

1) commission of egregious legal error;

2) the commission of a continuing pattern of legal error; or,

3) the commission of legal error which is founded on bad faith.

*In re Quirk,* 705 So.2d 172 (La. 1997); *see also* JEFFREY M. SHAMAN ET AL., JUDICIAL CONDUCT AND ETHICS, § 2.02, (2d ed.1995), *citing* Gerald Stern, *Is Judicial Discipline in New York a Threat to Judicial Independence?,* 7 PACE L.REV. 291, 303–45 (1987).

In various states, courts and/or judicial commissions have imposed discipline for legal errors made by judges which were egregious, were part of a pattern and practice of legal error, and/or made in bad faith. In those cases, there was no dispute that the legal rulings made by those judges were clearly error under their respective statutes or jurisprudence. For example, it has been held to be not only judicial error but also judicial misconduct when judges have consistently failed to advise defendants of their constitutional right to counsel, denied defendants a full and fair hearing, coerced guilty pleas, directed the jury to find a defendant guilty, failed to order recognizance or bail in nonfelony cases, or sentenced defendants to jail when only a fine is provided for by law.[19]

---

**19.** In the following cases, legal error constituted grounds for a finding of judicial miscon-

We are ever mindful of the fact that legal decisions may be made where the law thereunder is arguably unclear or ambiguous, and under those circumstances, judicial disciplinary proceedings are to be discouraged, if not condemned, as a frontal attack on the independence of the judiciary. It is for that reason that we hold that a member of the Texas judiciary may be found to have violated Article V, § 1–a(6)A of the Texas Constitution by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where the complained-of legal error is egregious, made as part of a pattern or practice of legal error, or made in bad faith. *See Quirk*, 705 So.2d at 177–78. So long as judicial rulings are made in good faith, and in an effort to follow the law as the judge understands it, the usual safeguard against error or judicial overreaching lies in appropriate appellate review. *See* JEFFREY M. SHAMAN ET AL., JUDICIAL CONDUCT AND ETHICS, § 2.02 (2d ed.1995). We further hold that with respect to judicial disciplinary proceedings, a specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of judicial authority constitutes "bad faith" as a matter of law.

In the instant case, there can be no doubt that a judge is vested with the inherent power to issue orders and take necessary legal action in order to fulfill judicial responsibilities. Likewise, there can be no doubt that under the proper circumstances, a writ of attachment may be issued to secure the attendance of a witness at a judicial proceeding. Concerns however, are raised as to the manner in which the procedural devices were utilized and more importantly, the overt, articulated motive in pursuing such extreme remedies.

The record establishes that the defense in the *Overturf* case sought the inspection of certain photographs. No motion for discovery was initially filed seeking the designated photographs, but rather, a *subpoena duces tecum* was sought and issued

duct. However, at the time the judicial actions were taken, they were clearly illegal under existing law. For example, in *In re Sanchez*, 9 Cal.3d 844, 109 Cal.Rptr. 78, 512 P.2d 302 (1973), the California Supreme Court found it was judicial misconduct for a judge to allow a bondsman to determine the amount of bail to be fixed on blank orders given to the bondsman by the judge. In *In the Matter of Sardino v. State Com'n on Judicial Conduct*, 58 N.Y.2d 286, 461 N.Y.S.2d 229, 448 N.E.2d 83 (1983), it was judicial misconduct for a judge to consistently fail to inform the accused of the right to counsel, to consistently fail to conduct even a minimal inquiry into whether the accused was entitled to assigned counsel, to post bail without reference to the statutory standards to be considered, and to order defendants held without bail where bail was required as a matter of law, all in violation of clear constitutional principles and statutes. In *In the Matter of McGee*, 59 N.Y.2d 870, 465 N.Y.S.2d 930, 452 N.E.2d 1258 (1983), it was judicial misconduct for a judge to routinely fail to advise defendants appearing before him of their constitutional rights including the right to consult an attorney, to pronounce a woman who had appeared in court guilty without informing her of the charge against her or advising her of her right to counsel, to coerce guilty pleas, and to fail to comply with statutory record-keeping requirements. *See also In the Matter of LaBelle*, 79 N.Y.2d 350, 582 N.Y.S.2d 970, 591 N.E.2d 1156 (1992) where it was judicial misconduct for a judge to repeatedly fail to order recognizance or bail as required by the plain reading of two statutes and admitted to be illegal by the judge in his stipulation of facts before the Commission. In *In re King*, 409 Mass. 590, 568 N.E.2d 588 (1991), it was judicial misconduct for a judge's primary consideration in his setting of bail to have been the fact that the racial group to which the defendants belonged "voted against" his brother in an election. *See also In the Matter of Inquiry Concerning a Judge*, 265 Ga. 843, 462 S.E.2d 728 (1995)(where it was found to be judicial misconduct for a judge to deny appeal bonds to criminal misdemeanor defendants, each of whom was entitled under the law to be granted appeal bonds); and *In the Matter of Reeves*, 63 N.Y.2d 105, 480 N.Y.S.2d 463, 469 N.E.2d 1321 (1984) (it was judicial misconduct for the judge to have a repeated pattern of failing to advise litigants of their right to counsel and right to appointed counsel.).

for a Harris County Sheriff's Deputy who was not the custodian of evidence, was never talked to by the defense, was noted to Respondent as being the wrong person subpoenaed, and who was nonetheless designated as "material." The purpose of the motion for discovery is to have the court order the State, either before or during trial, to produce and permit the inspection of evidence, in this case, the photographs in question which are in the possession, custody or control of the State or any of its agencies, including the Harris County Sheriff's Department. The order of discovery shall specify the time, place and manner of making the inspection. TEX. CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1997). Sanctions are provided for the disobedience of any such discovery order. The defense instead sought a *subpoena duces tecum* for Deputy Rendon for December 19, 1995. Rendon failed to appear.

At the January 17, 1996 pretrial hearing for *Overturf,* neither party complained of Rendon's failure to appear at the December 19, 1995 hearing; to the contrary, defense counsel sought the appropriate procedural remedy, i.e., a motion for discovery and corresponding order of discovery. The defense did not seek to have Deputy Rendon subpoenaed for the January 17, 1996 pre-trial hearing and of greater significance, never sought to have the Deputy attached and directly jailed.[20]

In the State of Texas, it is axiomatic that a subpoena may summon an individual to appear before a court to testify in a criminal action on a specified day. TEX. CODE CRIM.PROC.ANN. art. 24.01 (Vernon 1997). If a witness refuses to obey a subpoena, the witness may be fined at the discretion of the court; in the instant case, a fine not to exceed five hundred dollars.

*Id.,* art. 24.05. When a fine is entered against a witness for failure to appear and testify, the judgment is conditional; and a citation issued to the witness, at the court's discretion, to show cause why the witness should not be fined. *Id.,* art. 24.07. As noted above, the subpoena in the instant case was fatally defective in that it did **not** bear the signature of the Harris County District Clerk or of any deputy clerk, judge or magistrate, as required by law. *Id.,* art. 24.07.

An "attachment" on the other hand is a writ issued by a clerk of a court under seal, or by any magistrate, or by the foreman of a grand jury, in any criminal action or proceeding commanding a peace officer to take the body of a witness and bring him before the court or grand jury on a day named, or forthwith, to testify on behalf of the State or the defendant. The writ of attachment shall be dated and signed officially by the officer issuing it. *Id.,* art. 24.11. When a witness who resides in the county of the prosecution has been duly served with a subpoena to appear and testify in any criminal action or proceeding fails to so appear, the State or the defendant shall be entitled to have an attachment for such witness issued conditioned upon a showing that such witness is material and is about to move out of the county. *Id.,* art. 24.12, 24.14. Given that an attachment authorizes a "seizure" of the witness within the meaning of the Fourth Amendment to the United States Constitution and art. I, § 9 of the Texas Constitution, like an arrest warrant or a capias, a writ of attachment should issue only upon a judicial showing that the seizure is justified. *See* DIX & DAWSON, 41 TEXAS PRACTICE § 27.45 (1995). An affidavit or sworn testimony by the defendant reciting what the

---

20. We note that the *Overturf* case was continued from December 19, 1995 by agreement of the parties and without the knowledge of Respondent. If a case is continued, Deputy Rendon's obligation under the subpoena is terminated. If the defense in the *Overturf* case wished to obligate Deputy Rendon to appear at the January 17, 1996 hearing, the defense must have subpoenaed Deputy Rendon again. There is no automatic obligation under a subpoena to appear on the day for which a case is reset. *See Gentry v. State,* 770 S.W.2d 780, 785–86 (Tex.Crim.App.1988); *see also* DIX & DAWSON, 41 TEXAS PRACTICE § 27.42 (1995).

witness would testify to is a minimum requirement. *Hardin v. State,* 471 S.W.2d 60 (Tex.Crim.App.1971). Any bail which is set by the judge or magistrate should be reasonable and in such amount as to secure the attendance of the witness.

In the instant case the writ of attachment, issued pursuant to Respondent's order, was sloppy at best. The writ was signed by an individual who was **not** the Harris County District Clerk. It required that Deputy Rendon appear in the 337th Judicial Court at 9:00 a.m. on January 17, 1996; however, the writ was not signed until an hour **after** he was to appear. The writ of attachment refers to Deputy Rendon as the "defendant," rather than a witness. Moreover, Judge Barr admitted that prior to taking the step of depriving a citizen of his individual freedom, he had not researched the law regarding writs of attachment or witness bonds.

Judge Barr's actions above were "willful," in that they were done intentionally, or with gross indifference to his conduct. He clearly intended to engage in conduct for which he is disciplined, whether or not he had specific intent at the time to violate the Texas Code of Judicial Conduct. His actions were done with the conscious objective of causing the ultimate confinement of Deputy Paul Rendon in that the legal shortcomings were flagrant, shameful, and beyond all measure and allowance, given his admitted lack of knowledge in the area of writs of attachment. His conduct nonetheless clearly amounted to legal error.

The Special Master found that before Deputy Rendon could leave Respondent's courtroom, immediately after his release from confinement, Respondent called him to the bench. The record shows that as the Deputy and his attorney approached the bench, Respondent instructed counsel to step away from the bench. When the attorney stated, "But Judge, I'm his lawyer," Respondent replied that the Deputy did not need a lawyer since he was not charged with anything. Respondent then instructed the Deputy's attorney to leave the courtroom. There is no evidence that Deputy Rendon requested the presence of counsel at the bench in the instant case.

We have noted that legal error by a judge may constitute grounds for a finding of judicial misconduct if the commission of legal error is founded on bad faith. We have further found that the term "bad faith" as used in connection with the determination that the judge had engaged in unjudicial conduct by acting in bad faith, entails a specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of judicial authority.

The instant case, as it relates to the manner in which Judge Barr purportedly exercised inherent power, is charged with elements of bad faith. The motive of Judge Barr in summarily depriving Deputy Rendon of his freedom is clear: to impress upon law enforcement in Harris County, Texas, both its Sheriff's Department as well as the City of Houston Police Department that they should be more responsive to the trial needs of criminal defendants. Deputy Rendon was merely a pawn in a struggle between the court and the court's own auxiliary law enforcement agencies. It was an improper imposition of harsh judicial power for a reason unrelated to the purpose of the court.

Judge Barr sought to have Deputy Rendon attached and jailed on his own motion, without the benefit of affidavits or a requisite showing of materiality. Respondent wholly failed to take into account the deficiencies in the underlying documents, i.e., the subpoena and attachment. Those deficiencies are amplified given the fact that the writ of attachment was issued on his own motion. Respondent ordered Deputy Rendon summarily incarcerated without the benefit of a hearing. A "witness" bond for this law enforcement officer was set in the penal amount of $50,000, even accounting for the fact that the officer was a resident of Harris County, Texas. Re-

spondent refused to consider the Deputy's financial ability to post the required $50,-000 bond, although Respondent was required to release the Deputy if he was unable to give security upon such bail. Respondent acknowledged that the bond was unreasonable but refused to lower it, as requested, and instead threatened the Deputy's attorneys with a continuation of the writ and bond if they intended to pursue rights afforded the Deputy pursuant to the United States and Texas Constitutions. The attorneys likewise were informed by Respondent that if they did not contest the issue, the Deputy would be released the following day. Respondent openly acknowledged that the motive behind incarcerating Deputy Rendon was not to secure the attendance of a witness to testify, but rather to make an example of Deputy Rendon to both the Harris County Sheriff's Department and the Houston City Police Department. The incarceration was openly penal in nature. Respondent's motives to accomplish a purpose which he knew or should have known was beyond the legitimate exercise of his judicial authority are made all the clearer and conclusive by his desire to have Deputy Rendon to "smell the smells" and "feel what it is like to be in jail," that he did not want to fine Deputy Rendon or hold him in contempt, stating "I don't want to be a big asshole, I want to be a small asshole," and that his desire was to "rub the department's [Deputy Rendon's] nose in it to get the message across." Respondent's motives and actions were furthered knowing that by his own admission, he had not researched the law regarding writs of attachment or witness bonds.

Accordingly, we find that Judge Barr's conduct, as found by the Special Master and ultimately by the State Commission on Judicial Conduct, was willful conduct that violated the Code of Judicial Conduct, Canons 2A, 3B(3), 3B(4), and 3B(8), was

clearly inconsistent with the proper performance of his duties, and cast public discredit upon the judiciary or the administration of justice, all in violation of Article V, Section 1–a(6)A of the Constitution of the State of Texas.

■ We have examined only the evidence that tends to support the Commission's findings of willfulness in each of the paragraphs and charges listed in Item 1, and have disregarded all evidence and inferences to the contrary. In applying the above no evidence standard, we find that there is more than a scintilla of evidence to support the questioned findings in each of the above paragraphs, with the exception of the allegations found in Paragraph Four, Charge 5 of Item 1. Respondent's no evidence challenge fails as to all of the above findings and his complaint overruled as to each paragraph, save and except Paragraph Four, Charge 5 of Item 1 which is sustained. Although the evidence is legally insufficient, we hold that the absence of evidence did not cause, nor could it be reasonably calculated to have caused, the rendition of an improper recommendation, given the facts of the instant case. TEX. R.APP.P. 44.1.[21] Point of Error No. One is overruled, save and except Respondent's challenge to the Commission's finding that he willfully excluded Deputy Rendon's attorney from being present and heard, which is sustained.

Furthermore, we have examined all of the evidence in determining whether the questioned findings in each of the remaining paragraphs and charges listed in Item 1 are so against the great weight and preponderance of the evidence as to be manifestly unjust. Given the evidence, we find that there is abundantly sufficient, competent evidence of probative force to support the Commission's findings as to each of the remaining charges and paragraphs listed in Item 1, save and except Paragraph Four, Charge 5 of Item 1, for

21. Effective September 1, 1997, the Supreme Court amended and renumbered this rule from previous TEX.R.APP.P. 81(b)(1).

which we have found no evidence. We overrule Respondent's factual sufficiency claim.

### c) Behavior Toward Those with Whom a Judge Interacts in a Judicial Capacity

██ Respondent next contends that the evidence is both legally and factually insufficient to support the Special Master's Findings, and ultimately the Commission's Findings that he willfully violated TEX. CONST. art. V, § 1–a(6)A (1993), and TEX. CODE JUD. CONDUCT, Canons 3B(3) and 3B(4)(1993).[22]

The record in the instant case shows on April 22, 1997, Daimon Rainey was acquitted by a jury in the 337th Judicial Court of the offense of aggravated sexual assault. Respondent presided over the trial. Rainey was escorted to an adjacent holdover cell immediately outside the courtroom. Respondent ordered that Rainey, having been acquitted, be released from custody. The fact that Respondent ordered Rainey's release is not in dispute.

**22.** Respondent challenges the legal and factual sufficiency of evidence to support the following findings:

Item 3, Charge 1:

1. Judge Barr's actions on or about April 22, 1997, in loudly, angrily, and publicly insisting that Deputies James Phillips and David Clingan violate Harris County Sheriff Department policy concerning the release of individuals in the custody of the Department, was willful conduct that was clearly inconsistent with the proper performance of his duties, and violated Article V, Section 1–a(6)A of the Texas Constitution.

2. Judge Barr's actions on or about April 22, 1997, in loudly, angrily, and publicly insisting that Deputies James Phillips and David Clingan violate Harris County Sheriff Department policy concerning the release of individuals in the custody of the Department, was willful conduct that cast public discredit upon the judiciary or the administration of justice, and violated Article V, Section 1–a(6)A of the Texas Constitution.

3. Judge Barr's actions on or about April 22, 1997, in loudly, angrily, and publicly insisting that Deputies James Phillips and David Clingan violate Harris County Sheriff Department policy concerning the release of individuals in the custody of the Department, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(3), which provides, "A judge shall require order and decorum in proceedings before the judge."

4. Judge Barr's actions on or about April 22, 1997, in loudly, angrily, and publicly insisting that Deputies James Phillips and David Clingan violate Harris County Sheriff Department policy concerning the release of individuals in the custody of the Department, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(4), which provides in pertinent part, "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity...."

Item 3, Charge 2

1. Judge Barr's action on or about April 22, 1997, in attempting personally and physically to enforce his order that Mr. Daimon Rainey be immediately released from custody, by grasping Mr. Rainey's arm with the intention of freeing him from the custody of Deputies James Phillips and David Clingan, was willful conduct that was clearly inconsistent with the proper performance of his duties, and violated Article V, Section 1–a(6)A of the Texas Constitution.

2. Judge Barr's action on or about April 22, 1997, in attempting personally and physically to enforce his order that Mr. Daimon Rainey be immediately released from custody, by grasping Mr. Rainey's arm with the intention of freeing him from the custody of Deputies James Phillips and David Clingan, was willful conduct that cast public discredit upon the judiciary or the administration of justice, and violated Article V, Section 1–a(6)A of the Texas Constitution.

3. Judge Barr's action on or about April 22, 1997, in attempting personally and physically to enforce his order that Mr. Daimon Rainey be immediately released from custody, by grasping Mr. Rainey's arm with the intention of freeing him from the custody of Deputies James Phillips and David Clingan, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(3), which provides, "A judge shall require order and decorum in proceedings before the judge."

4. Judge Barr's action on or about April 22, 1997, in attempting personally and physically to enforce his order that Mr. Daimon Rainey be immediately released from custody, by grasping Mr. Rainey's arm with the intention of freeing him from the custody of Deputies James Phillips and David Clingan, was willful conduct that violated the Code of Judicial Conduct, Canon 3B(4), which provides, "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity...."

On the day in question, Harris County Sheriff's Deputy James A. Phillips was assigned to Respondent as his process server. Deputy Phillips refused to comply with Respondent's oral order, citing policies of the Harris County Sheriff's Department which prohibits the immediate release of an individual directly from the courtroom, but rather directs officers to escort the individual to a separate holding area located in the basement of the building. Individuals are purportedly released from that location.[23] Sheriff's Deputy Phillips testified that after the judgment of acquittal, he proceeded to lead Rainey to an elevator in order to escort him across the street to the Harris County Inmate Processing Center for deprocessing and release. As they passed the main entrance to the courtroom door, Rainey walked over to his fiancée and mother and embraced them both. Respondent approached them and asked Rainey if he would like to leave with his family. Rainey stated that he would. Deputy Phillips testified that at the time, Respondent appeared frustrated. Deputy Phillips further testified that Respondent advised Rainey that he was a free man and that he could take the elevator and leave with his family. Deputy Phillips further told him that if he left the floor, he would be either rearrested or detained. The testimony shows that Respondent approached Deputy Phillips, his process server, and within approximately a foot from his face, inquired of the Deputy whether he was countermanding his order for Rainey's immediate release. The testimony shows that while Respondent's voice was not exceptionally loud, it was loud enough that the people in the immediate area could hear it. Deputy Phillips noted that Respondent was angry, speaking in a quivering, breaking, high-pitched voice. At this point, Respondent placed his hand on Rainey's right arm, holding it, and began to lead him toward the elevator. Deputy Phillips, in response, took hold of Rainey's left arm. At that moment, Deputy David B. Clingan, Respondent's bailiff, returned from the jury room and physically removed Respondent's hand from Rainey's right arm. Deputy Phillips testified that Respondent threatened contempt to which his bailiff replied that Respondent would have to find them in contempt since they were going to take Rainey to be processed out.

Court Bailiff, Sheriff's Deputy Clingan, testified that he too advised Respondent that they could not release Rainey due to the Harris County Sheriff's Department policy that inmates were not to be released directly from the courtroom. He testified that Respondent was upset and agitated during the discussion. He further testified that during the discussions, Respondent

---

**23.** We note once again that the fact that Respondent issued an oral order for the release of Rainey after accepting the judgment of acquittal is not in dispute. Neither is the validity of the oral order. Instead, what is disputed is the conflict between the judicial order and the policy not to immediately release a prisoner upon acquittal. We are not asked to resolve that conflict, consequently, we render no opinion, either expressed or implied on the validity of either. We do emphasize however, the need for proper courtroom security, particularly after an individual's acquittal of such an emotionally packed charge of aggravated sexual assault. Perhaps the better practice might be to remove and separate all interested parties from the courtroom setting and sanitize the courtroom of all sudden emotions. Courthouse security is a current issue of utmost importance. We take judicial notice of recent courthouse shootings in Tarrant and Dallas Counties, and, of course, the bombing of the federal building in Oklahoma City. *Gibson v. State*, 921 S.W.2d 747 (Tex.App.—El Paso 1996, orig. proceeding) *citing Ex parte Williams*, 870 S.W.2d 343, 347 (Tex.App.—Fort Worth 1994, pet. ref'd); *McCulloch v. State*, 740 S.W.2d 74, 75–76 (Tex.App.—Fort Worth 1987, pet. ref'd)(court of appeals may take judicial notice of facts that are notorious, well known, or easily ascertainable even if not judicially noticed in the trial court); *Lewis v. State*, 674 S.W.2d 423, 426 (Tex.App.—Dallas 1984, pet. ref'd). The recent violence visited upon innocent employees working in, and innocent visitors to public buildings can, and does originate with the criminally accused and victims of crimes alike.

reached out and grabbed Rainey and told him that he could go down the elevator with him. Finally, Deputy Clingan testified that he immediately grabbed Respondent's wrist with his right hand and grabbed Rainey with his left, and pulled them apart from one another.

Ms. Beth Boswell, Harris County Assistant District Attorney, testified that she was the prosecutor in the case styled: *State of Texas v. Daimon Rainey.* After the judgment of acquittal, she saw Respondent and his "bailiffs" [Deputies Phillips and Clingan] heading down the hall toward where she was standing, i.e., immediately outside the door between the back hall and the courtroom. Ms. Boswell testified that she very quickly went inside the courtroom to distance herself from the situation, knowing that it did not involve her personally. Finally, she noted that there very definitely was a dispute between the individuals.

Harris County Sheriff's Sergeant Ricky Davis testified that he received a telephone call from Deputy Phillips asking that he come to the 337th Judicial District Court. He stated that upon arrival, the Deputies explained to him that the judge had ordered the inmate's release directly from the courtroom which was against policy. Sergeant Davis further stated that they talked to Rainey's attorney, explained to him the problem, to which the attorney stated that he had no objections to the procedure. Rainey himself stated that he understood the policy and did not have a problem with it. Sergeant Davis noted that they even offered the attorney the opportunity to go with them when they took Rainey over to make sure they were expediting the process to get him released. The attorney declined and stated that he trusted them in that matter. Sergeant Davis testified that once Captain Dan Doehring came to the courtroom, as summoned, that he remained outside while Captain Doehring was in Respondent's chambers. He stated that while outside, he could hear Respondent through closed doors, in a fairly loud voice, telling Captain Doehring that he did not want Deputies Clingan or Phillips back in his courtroom.

In contrast, Respondent contends that the evidence suggests that he remained on the bench immediately after the jury verdict and ordered Rainey's release while on the bench; that at the point in time that the jury was escorted to the jury room by Deputy Clingan, Rainey was seated at counsel's table; that at least one other Harris County District Judge orders the immediate release of individuals who have been incarcerated but acquitted by a jury and that the Harris County Sheriff's Department policies are irrelevant in light of the legality of the Respondent's order; that Respondent's tone of voice during the dispute was less than "loud and angry;" that Rainey's counsel was mistaken in his belief that his client had the choice of being permitted to follow Respondent's order and be immediately released or return to the Inmate Processing Center at the Harris County Sheriff's Department as a "favor" to the deputies and that the term "angrily," in describing Respondent's speech during the dispute is inaccurate; that contrary to the testimony of Deputy Clingan that Respondent grabbed Rainey, that Respondent's portrayal that he "grasped" Rainey is inaccurate; that Respondent, although not recalling asking Deputy Phillips "are you defying my order," doesn't deny saying it, but that he did not shout; that there is no evidence that Respondent was *shouting* in a loud and *angry* voice;" and finally, that there is no testimony that Respondent shouted and/or spoke in a loud and angry voice in conversing with Harris County Sheriff's Deputy Dan Doehring.

 Canon 3B of the Texas Code of Judicial Conduct provides in pertinent part as follows:

**B. Adjudicative Responsibilities.**

. . . . .

.

(3) A judge shall require order and decorum in proceedings before the judge.

TEX.CODE JUD. CONDUCT, Canon 3B(3)(1993).

As noted above, the evidence is in conflict in various respects. In particular, the evidence is in conflict as to whether the dispute in question between Respondent and his law enforcement staff members occurred during proceedings, as required by Canon 3B(3) of the Texas Code of Judicial Conduct. The clear language of Canon 3B(3) distinguishes conduct **during** proceedings from other conduct. While we find no guidance in the case law of this state, or any other state for that matter, we hold that the precise language of Canon 3B(3), as it relates to "proceedings," contemplates conduct which takes place in open court, while the judge is on the bench, fulfilling an adjudicative function.

■■■■ In applying the definition of "proceedings" as set forth above, we note that there is a conflict in evidence. Surprisingly, Respondent contends that he was in fact on the bench at the time his order of release was issued. The record, on the other hand, is replete with testimony as to the various locations where this dispute is said to have started, continued, and concluded. As further noted above, this Review Tribunal cannot substitute its findings for those of the Commission. If there is sufficient competent evidence of probative force to support the findings, they must be sustained. *Thoma*, 873 S.W.2d at 485. Moreover, if there is conflicting evidence, as in this case, the findings of the Special Master on such matters, as adopted by the Commission, will be regarded as conclusive. *Id.* In the instant case, the Special Master found that Respondent "had already left the bench as Deputy Phillips was returning to the courtroom, after placing Mr. Rainey in the holdover cell." Consequently, we find as conclusive, the Special Master's factual finding that the dispute was not in the course of proceedings before the judge, as envisioned by Canon 3B(3) of the Texas Code

of Judicial Conduct and as we have defined "proceedings" above. TEX.CODE JUD. CONDUCT, Canon 3B(3)(1993).

■■■■ We turn next to Respondent's conduct off the bench, in particular, his words and conduct toward his law enforcement staff members and their insistence on following an internal sheriff's department policy in violation of a lawful court order. In Texas, a judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity, and should require similar conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control. TEX.CODE JUD. CONDUCT, Canon 3B(4)(1993). It is generally accepted that judges can be disciplined for being rude or discourteous toward other justice system personnel. *Geiler v. Commission on Judicial Qualifications*, 10 Cal.3d 270, 110 Cal.Rptr. 201, 515 P.2d 1 (1973)(referring to court employees with obscenities); *In re Broome*, 245 Ga. 227, 264 S.E.2d 656 (1980)(using derogatory language toward another judge); *Murtagh v. Maglio*, 9 A.D.2d 515, 195 N.Y.S.2d 900 (1960)(belittling the extent of injuries of a law enforcement officer). In applying the Texas Code of Judicial Conduct, Canon 3B(4) to the instant situation, we focus not on the legality or illegality of Respondent's order to release Rainey, but rather assume, as did the parties, that Respondent's order was valid. Instead, we focus on the conduct of Respondent, in relation to his law enforcement staff members, in his manner and choice of language and in personally attempting to enforce his order outside the courtroom.

In recognizing that in Texas, a judge shall be patient, dignified and courteous to those with whom the judge deals in an official capacity, we are not unmindful of the fact that judges are merely human. Certainly, the pressures occasioned by both the volume and the nature of the business, as well as the administrative

frustrations that go along with the business which comes before a trial court in the State of Texas may on occasion cause even the most patient judge to use intemperate language and be tempted to resort to "self-help" in the enforcement of court's orders, when court personnel refuse to comply with such orders. *See Ross*, 428 A.2d at 866. While the use of intemperate language, under certain circumstances, is understandable though not condoned, we caution against a judge's retreat from her or his adjudicative responsibilities and pursuit of personal intervention, or "self-help," in the enforcement of judicial orders.

In the instant case, there can be no doubt that Respondent was less than patient and courteous to Deputies Phillips and Clingan, two law enforcement officers assigned to his court and thus subject to his direction and control. However, in carefully reviewing the record, we note that as intemperate as the language was, no vile, obscene or abusive language was used. Nonetheless, we note with caution that Respondent's language comes dangerously close to degrading and diminishing the law, the judge himself, and the State of Texas. Of particular concern is the fact that Respondent's dispute was public and of such a nature to possibly convey to those individuals within earshot, that justice is failing and its proper administration is only achievable through the personal intervention or self-help of judges themselves.

We turn next to the aspect of Respondent's attempt at self-help in the enforcement of his order that Rainey be released from custody upon being acquitted of aggravated sexual assault.

■■■ As noted above, an independent and dynamic judiciary is critical if the rights of citizens are to be protected. An infringement on the independence of the judiciary is an immediate threat to the fundamental concept of government under law. *Ross*, 428 A.2d at 860. Absent a true sense of accountability, judicial conduct that remains unfettered, leads to judicial anarchy. It is for that reason that conduct on the part of a judge that departs from otherwise recognized, established, and accepted procedures for the enforcement of orders and judgments, constitutes lawless conduct which advances a personal brand of justice in which the judge becomes a law unto herself or himself. We find such lawless judicial conduct to be as threatening to the concept of government as is the loss of judicial independence. *Id.* We clearly, absolutely, unequivocally, and unanimously condemn the use of self-help or other personal intervention on the part of a judge in an effort to enforce a judicial order when established judicial remedies are available. We also clearly hold that a sheriff's department's policy, however "reasonable" it may be, cannot be allowed to override the law or a lawful court order.

The evidence in the instant case demonstrates an early attempt on the part of Respondent to personally enforce his judicial order. We note however, that Respondent abandoned his brief attempt at such self-help, for whatever reason, and retreated to his proper judicial role. Although the order to release the prisoner was a lawful order that should have been obeyed, we do not focus on whether the policy of the Harris County Sheriff's Department runs afoul of constitutional protections afforded individuals who have just been acquitted of a crime. Instead, we properly focus on whether established and recognized procedures for the enforcement of a judicial order have been properly pursued. In this case, we find the evidence lacking.

We have examined only the evidence that tends to support the Commission's findings of willfulness in Item 3, Charge 1, Paragraphs One through Four, and Item 3, Charge 2, Paragraphs One through Four, and have disregarded all evidence and inferences to the contrary. In applying the above no evidence standard we find that there is more than a scintilla of evidence to support the questioned findings in Item 3, Charge 1, Paragraphs One, Two,

and Four, and Item 3, Charge 2, Paragraphs One, Two, and Four. Respondent's no evidence challenge fails as to the above findings and his complaint overruled to that extent. Finding that Respondent's complained-of actions did not occur during court proceedings, but rather took place in the courtroom after proceedings had concluded, in the hallway and/or elevator lobby, or Respondent's chambers, we sustain Respondent's no evidence challenge only as to the questioned findings in Item 3, Charge 1, Paragraph Three, and Item 3, Charge 2, Paragraph Three.

Furthermore, we have examined all of the evidence in determining whether the remaining questioned findings in Item 3, Charges 1 and 2 are so against the great weight and preponderance of the evidence as to be manifestly unjust. Given the evidence, we find that there is insufficient competent evidence of probative force to support the Commission's findings as to Item 3, Charge 1, Paragraphs One, Two, and Four, and Item 3, Charge 2, Paragraphs One, Two, and Four. We sustain Respondent's contentions in that regard.

Respondent's Point of Error No. One is overruled, save and except that portion of the point of error which addressed "Behavior Toward Those with Whom a Judge Interacts in a Judicial Capacity," which is sustained. Although the evidence is legally and factually insufficient in this regard, we hold that the absence of evidence did not cause, nor could it be reasonably calculated to have caused, the rendition of an improper recommendation, given the facts of the instant case. TEX.R.APP.P. 44.1.[24]

### 2. Constitutional Challenges

 Respondent, for the very first time on review, has advanced various constitutional arguments. Specifically, Respondent asserts that the State Commission on Judicial Conduct has failed to comply with constitutional provisions which mandate the requiring publication of its annual report, that the Texas Code of Judicial Conduct sets forth prohibited actions which contain vague and indefinite phrases; that he has been denied his First Amendment right to freedom of speech and expression; that his removal from office would disenfranchise voters, given the constitutional scheme under which judges are elected; that the application of the Texas Code of Judicial Conduct and pertinent law as to him is unconstitutional for reasons of overbreadth and vagueness; and, that the State Commission on Judicial Conduct unconstitutionally and incorrectly interpreted state law.

As noted above, to the extent that they do not conflict with the RULES FOR REMOVAL OR RETIREMENT OF JUDGES, the civil rules of procedure, both trial and appellate, are applicable. TEX.R.REM'L/RET. JUDGES, 56 Tex.B.J. 823 (1993), Rules 10(d), 12(e) and (g). Consistent with established rules of procedure, Respondent, after having been served with notice of the pendency of formal proceedings against him, was required to file, and did file his original verified answer. TEX.R.CIV.P. 83; TEX. R.REM'L/RET. JUDGES, Rule 10(b). In addition, once a hearing has been conducted by a special master, as in the instant case, and the report of the special master has been filed with the Commission, the Respondent may file a statement of objections to such report. TEX.R.REM'L/RET. JUDGES, Rule 10(i). This Statement of Objections to Report of Special Master, analogous to an original answer, may set forth all objections to the report and all reasons in opposition to the findings as sufficient grounds for removal or retirement. *Id.* The original answer, as well as the Statement of Objections to Report of Special Master, may contain matters in bar, defense, or avoidance, as in the case of constitutional protections and/or the violations of constitutional provisions.

---

**24.** Effective September 1, 1997, the Supreme Court amended and renumbered this rule from previous TEX.R.APP.P. 81(b)(1).

In Point of Error No. Two, Respondent contends that the application of the Texas Code of Judicial Conduct and law is unconstitutional for reasons of overbreadth and vagueness. Specifically, Respondent maintains that the Texas Code of Judicial Conduct is void for vagueness because actions that are inconsistent with the proper performance of a judge's duties and conduct that cast public discredit upon the judiciary or the administration of justice, by definition, contain vague and indefinite phrases that would deny a person due process of law. Respondent additionally claims that the Commission failed to make its annual report as required by law.

Title 2, Chapter 33.005 of the Texas Government Code pertains to judges and the State Commission on Judicial Conduct. Chapter 33.005 provides as follows:

> (a) Not later than December 1 of each year, the commission shall submit to the legislature a report for the preceding fiscal year ending August 31.(b) The report must include: (1) an explanation of the role of the commission; (2) annual statistical information and examples of proper and improper judicial conduct; (3) an explanation of the commission's processes; and (4) changes the commission considers necessary in its rules for the applicable statutes or constitutional provisions. (c) The commission shall distribute the report to the governor, lieutenant governor, and speaker of the house of representatives and shall cause the report to be printed in the Texas Bar Journal. (d) The legislature shall appropriate funds for the preparation and distribution of the report.

TEX. GOV'T CODE ANN. § 33.005 (Vernon's Supp.1997).

Citing absolutely no legal authority, Respondent maintains that the State Commission on Judicial Conduct has failed to comply with the requisite statutory provisions because the last report that was published in the Texas Bar Journal was the 1993 Commission Report that was published in May 1994. On review, Respondent does not question whether the State Commission on Judicial Conduct has complied with the statutory provisions in all other respects. However, Respondent has failed to cite any authority to support his assertions. Failure to cite authority in support of a point of error on appeal waives the complaint. *In the Matter of D.W.*, 933 S.W.2d 353, 357 (Tex.App.—Beaumont 1996, writ denied); *Romero v. Parkhill, Smith & Cooper, Inc.*, 881 S.W.2d 522, 529 (Tex.App.—El Paso 1994, writ denied); *Owens–Corning Fiberglas Corp. v. Baker*, 838 S.W.2d 838, 843 (Tex.App.—Texarkana 1992, no writ); *see* TEX.R.APP.P. 38.1(h).[25] Additionally, while the subject was briefly discussed by counsel before the Special Master, the record does not show that Respondent secured a ruling on the subject matter from the Special Master, or later the Commission, on the issues discussed immediately above. Therefore, Respondent has waived any complaint on appeal. *See Roberts v. Friendswood Development Co.*, 886 S.W.2d 363, 365 (Tex. App.—Houston [1st Dist.] 1994, writ denied). For the reasons set forth above, we find that Respondent has failed to properly preserve error and as a result, the issue submitted is not properly before this Tribunal for review. Accordingly, Respondent's Point of Error No. Two is overruled in its entirety.

▇ We have reviewed the record in the instant case, in particular for matters in bar, defense or avoidance as those matters might relate to constitutional guarantees, and find that Respondent has wholly failed to present any such matters to either the Special Master or Commission for proper adjudication. Predicates for complaints on appeal must be preserved at the trial court level by motion, exception, objection, or some other vehicle. TEX.R.APP.

---

**25.** Effective September 1, 1997, the Supreme Court amended and renumbered this rule from previous TEX.R.APP.P. 74(f).

P. 33; [26] *PGP Gas Products, Inc. v. Far-iss*, 620 S.W.2d 559, 560 (Tex.1981). As applied to an action to remove a judge from office, Respondent and the Commission, through its Examiner, are restricted on appeal to the issues and theories on which the case was tried before the Special Master and presented to the Commission on Judicial Conduct, and the Review Tribunal, absent fundamental error, is not authorized to consider an issue or theory that was not before the trial court. *Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex.1983). If a Respondent raises an issue for the first time on review, no error has been properly presented to the Review Tribunal. *See Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

Even constitutional arguments not asserted in the trial court are waived on appeal. *Osterberg v. Peca*, 952 S.W.2d 121, 124–26 (Tex.App.—El Paso 1997, no writ), *citing Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993); *Walker v. Employees Retirement Sys. of Texas*, 753 S.W.2d 796, 798 (Tex.App.—Austin 1988, writ denied); *see also, Armstrong v. Randle*, 881 S.W.2d 53, 58 (Tex.App.—Texarkana 1994, writ denied). Our role on review, among others, is to determine whether the Special Master erred in making findings based on the record before it. *Great North Am. Stationers, Inc., v. Ball*, 770 S.W.2d 631, 634 (Tex.App.—Dallas 1989, error dism'd); *see also, Ragsdale v. Progressive Voters League*, 790 S.W.2d 77, 85 (Tex.App.— Dallas 1990), *aff'd in part and rev'd in part on other grounds*, 801 S.W.2d 880 (Tex.1990).

**26.** Effective September 1, 1997, the Supreme Court amended and renumbered this rule from previous Tex.R.App.P. 52(a).

**27.** The State Commission on Judicial Conduct found that Respondent's action on or about January 17, 1996, in setting a $50,000 witness bail in connection with his attachment of Deputy Paul Rendon, was willful conduct that violated the Texas Code of Judicial Conduct,

Respondent has failed to preserve error on this complaint of denial of freedom of speech and has further failed to present all remaining constitutional complaints to the Special Master or ultimately the Commission for proper adjudication and preservation for review. Insofar as these issues are unsupported by argument or evidence, they are waived on appeal. Accordingly, we overrule Respondent's Point of Error No. Two in its entirety.

### 3. Judicial Behavior: Recommended versus Prohibited

In Point of Error No. Three, Respondent, citing absolutely no authority, contends that the State Commission on Judicial Conduct, in sustaining the allegations in Item 1, Charges 2, and 3, improperly found violations of the Texas Code of Judicial Conduct for conduct which is aspirational, rather than prohibited. Specifically, Respondent contends that a judge cannot be disciplined for violations of "recommended" behavior.

As noted above, the State Commission on Judicial Conduct found that Respondent's action on or about January 17, 1996, in setting a $50,000 witness bail in connection with his attachment of Deputy Paul Rendon, was willful conduct that violated the Texas Code of Judicial Conduct, Canon 2A.[27] Respondent contends that the application of Canon 2A of the Code to this fact situation is prohibited by the rules of the Code itself. We disagree.

Canon 2 of the Texas Code of Judicial Conduct provides in pertinent part as follows:

Canon 2A. The Commission likewise found that Respondent's action that same day, in instructing that Deputy Paul Rendon be taken into custody, without having personally reviewed the factual and legal adequacy of the recitations in the "Subpoena" and the Writ of Attachment issued to secure Deputy Rendon's presence, was also willful conduct that likewise violated Canon 2A.

2. Avoiding Impropriety and the Appearance of Impropriety in All of the Judge's Activities

A. **A judge shall comply with the law** and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

. . . . .

Tex.Code Jud. Conduct, Canon 2A (1993) [emphasis added].

On review, Respondent suggests that since Canon 2 is titled "Avoiding Impropriety and the Appearance of Impropriety in All of the Judge's Activities," and Canon 3 is titled "Performing the Duties of Judicial Office Impartially and Diligently," that the crux of Respondent's ethical violations lie in violation of the latter, if at all. Respondent further suggests that the Commission is attempting to apply Canon 2A, which was meant to "apply to a judge violating penal laws," to a Canon 3B(2) situation. Once again, we disagree.

We find the language of Canon 2A to be clear on its face. The requirement that "a judge shall comply with the law" is plain, obvious, and couched in mandatory terms. The language is not restricted to penal violations. The pertinent language is obligatory, deviation from which is prohibited, not aspirational, as suggested by Respondent. Point of Error No. Three is overruled in its entirety.

4. Challenges to Recommendation for Removal

a) Applicability of the "Forgiveness Statute"

█ Respondent asserts for the first time on review that public policy dictates the application of the "Forgiveness Statute." *See* Tex.Gov't Code Ann. § 665.081 (Vernon 1997), formerly Tex.Rev.Civ.Stat. Ann. art. 5986 (Vernon 1925). The statute provides that "An officer in this state may not be removed from office for an act the officer may have committed before the officer's election to office." *Id.* The Texas

Supreme Court has held that the statute does not apply to the office of district judge. *See In re Carrillo,* 542 S.W.2d 105 (Tex.1976); *In re Brown,* 512 S.W.2d at 317; and *In re Laughlin,* 153 Tex. 183, 265 S.W.2d 805 (1954); *but see, In re Bates,* 555 S.W.2d 420 (Tex.1977)(reserving for future consideration the applicability of the forgiveness statute to removal actions brought under Tex. Const. art. V § 1–a). Likewise, a majority of courts have rejected the forgiveness doctrine, holding that a judge is not immune from discipline for acts committed in a prior term merely because the judge was reelected or reappointed to a new term. *See, e.g., In re Diener and Broccolino,* 268 Md. 659, 304 A.2d 587 (1973); *In re Greenberg,* 442 Pa. 411, 280 A.2d 370 (1971); and *Sarisohn v. Appellate Div.,* 21 N.Y.2d 36, 286 N.Y.S.2d 255, 233 N.E.2d 276 (1967).

However, we do not reach the merits of Respondent's argument. As previously discussed, if an issue is raised for the first time on review, no error has been properly presented to the Review Tribunal. *See Golden Villa Nursing Home,* 674 S.W.2d at 343. Since Respondent has failed to preserve error on this issue and insofar as this issue is unsupported by argument or evidence, it is waived on appeal. Accordingly, we overrule Respondent's Point of Error No. Four as it relates to application of the Forgiveness Statute.

b) Removal from Judicial Office for Persistent Conduct

█ In the final issue raised within the fourth point of error, Respondent contends that the Commission's conclusions on persistent conduct are each couched in terms of a combination of events, the aggregate of which constitutes persistent conduct. Further, Respondent reasons that if the Review Tribunal sustains any of Respondent's points of error, or portions thereof, then the Tribunal cannot find for removal on the basis of persistent conduct. For the reasons set for below, we agree.

The findings of the State Commission on Judicial Conduct on the issue of persistent conduct are as follows:

1. Judge Barr's actions 1) on or about January 24, 1996, in stating to prosecutor [Ms. S.R.] that, "I can't believe you just asked that question. I feel like coming across the bench and slapping the crap out of you . . .; 2) on or about April 1997, in shouting angrily at Deputies of the Harris County Sheriff's Department; and 3) on or about April 22, 1997, in attempting personally and physically to enforce his order that Mr. Daimon Rainey be immediately released from custody, constitute persistent conduct that was clearly inconsistent with the proper performance of his duties, and violated Article V, Section 1–a(6)A of the Texas Constitution.

2. Judge Barr's actions 1) on or about January 24, 1996, in stating to prosecutor [Ms. S.R.] that, "I can't believe you just asked that question. I feel like coming across the bench and slapping the crap out of you . . .; 2) on or about April 1997, in shouting angrily at Deputies of the Harris County Sheriff's Department; and 3) on or about April 22, 1997, in attempting personally and physically to enforce his order that Mr. Daimon Rainey be immediately released from custody, constitute persistent conduct that cast public discredit upon the judiciary or the administration of justice, and violated Article V, Section 1–a(6)A of the Texas Constitution.

3. Judge Barr's actions 1) on or about January 24, 1996, in stating to prosecutor [Ms. S.R.] that, "I can't believe you just asked that question. I feel like coming across the bench and slapping the crap out of you . . .; 2) on or about April 1997, in shouting angrily at Deputies of the Harris County Sheriff's Department; and 3) on or about April 22, 1997, in attempting personally and physically to enforce his order that Mr. Daimon Rainey be immediately released from custody, constitute persistent con-

duct that violated the Code of Judicial Conduct, Canon 3B(3), which provides, "A judge shall require order and decorum in proceedings before the judge."

4. Judge Barr's actions 1) on or about January 24, 1996, in stating to prosecutor [Ms. S.R.] that, "I can't believe you just asked that question. I feel like coming across the bench and slapping the crap out of you . . .; 2) on or about April 1997, in shouting angrily at Deputies of the Harris County Sheriff's Department; and 3) on or about April 22, 1997, in attempting personally and physically to enforce his order that Mr. Daimon Rainey be immediately released from custody, constitute persistent conduct that violated the Code of Judicial Conduct, Canon 3B(4), which provides, in pertinent part, "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity. . . ."

Article V § 1–a(6A) of the Constitution of the State of Texas provides:

Any justice or judge of the courts established by the Constitution or created by the Legislature as provided in Section 1, Article V, of this Constitution, may, subject to the other provisions hereof, be removed from office for willful or persistent violation of rules promulgated by the Supreme Court of Texas, incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice.

TEX. CONST. art. V, § 1–a(6)A (1993). As applied to the instant case, Respondent may be removed from office for either the willful or persistent violation of the Texas Code of Judicial Conduct. The term "willful" has been exhaustively defined above. "Persistent" conduct, with respect to judicial disciplinary proceedings, is constant

conduct which demonstrates a series of associated efforts and determination and which is insistently repetitive or continuous. It is conduct which is very general in scope in that the conduct need not manifest itself in identical fashion. Persistent conduct need not necessarily be of a long duration, but rather connotes conduct which remains unbroken throughout its entire length, no matter how great.

The Commission's adopted findings of fact as to Respondent's persistent conduct are reviewable for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the legal and factual sufficiency of the evidence supporting all other findings and conclusions of the Commission in the instant case.

We need not recount the entire testimony exhaustively set forth above. We note that we have considered only the evidence that tends to support the Commission's findings of Respondent's persistent conduct, as described above, and have disregarded all evidence and inferences to the contrary. We have previously found the evidence both legally and factually sufficient to support the Commission's findings that Respondent stated to Assistant District Attorney, Ms. S.R. that, "I can't believe you just asked that question. I feel like coming across the bench and slapping the crap out of you...." Respondent has confessed as much. However, given the disposition of Respondent's Point of Error No. One, subpoint c, which relates specifically to "Behavior Toward Those with Whom a Judge Interacts in a Judicial Capacity," we find that the evidence is legally insufficient to support the Commission's findings of persistent conduct, as specifically alleged above. Respondent's Point of Error No. Four, as to persistent conduct, as alleged, is sustained.

### 5. Conclusion

 The RULES FOR THE REMOVAL OR RETIREMENT OF JUDGES provide that subsequent to the conclusion of all hearings, the State Commission on Judicial Conduct is to render its decision to dismiss the complaint, publicly censure the judge, or recommend the removal or the retirement of the judge. TEX.R.REM'L/RET. JUDGES, Rule 10(m). Upon making a determination to recommend the removal or retirement of a judge, the Commission is to request the Chief Justice of The Texas Supreme Court to appoint a review tribunal, composed of seven justices, selected by lot from the courts of appeals of our state. *Id.,* Rules 1(h); 11; 12(a). Within 90 days from the date the record is filed with the review tribunal, it shall order public censure, retirement, or removal, **as it finds just and proper**, or wholly reject the recommendation. *Id.,* Rule 12(h) [emphasis added]. A judge may appeal a decision of the review tribunal to the Texas Supreme Court under the substantial evidence rule. *Id.,* Rule 13. Thus we view the responsibility of this Review Tribunal as two-fold:

(1) To review the Commission's adopted findings for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the legal and factual sufficiency of the evidence supporting findings in a civil case, either by a trial court or by a jury;

(2) Upon review, to order public censure, retirement, or removal, as it finds just and proper, or wholly reject the recommendation.

 Unlike a judicial disciplinary sanction where the State Commission on Judicial Conduct has determined that an informal sanction is appropriate, (but not a decision to institute formal removal proceedings), review of which is by a special court of review which holds a trial de novo, this Review Tribunal, as noted above, serves as a review authority. *Id.,* Rule 9. Upon finding that the evidence is factually and legally sufficient to support the findings and conclusions of the State Commission on Judicial Conduct, or any portions of any such findings and conclusions, this Review Tribunal may reject the recommendation of the Commission that sanc-

tions be imposed. If the recommendation that sanctions are deserving and accepted, this Review Tribunal must order public censure, retirement [if applicable], or removal. *Id.*, Rule 12(h). A Review Tribunal, convened by the Texas Supreme Court for the purpose of reviewing a judicial disciplinary action which includes a recommendation of removal from office, is not bound by the specific recommendations of the State Commission on Judicial Conduct, although the specific recommendations are given great deference when based on legally and factually sufficient evidence. A Review Tribunal is vested with discretion to fashion a sanction which is available, as it finds just and proper.

■■■■■ This Review Tribunal wholeheartedly adopts the reasoning and language advanced by the Supreme Court of the State of Nebraska in *In re Kneifl,* wherein that Court discussed the purpose of imposing sanctions for judicial misconduct:

> The purpose of sanctions in cases of judicial discipline is to preserve the integrity and independence of the judiciary and to restore and reaffirm public confidence in the administration of justice. The discipline we impose must be designed to announce publicly our recognition that there has been misconduct; it must be sufficient to deter respondent from again engaging in such conduct; and it must discourage others from engaging in similar conduct in the future. Thus, we discipline a judge not for purposes of vengeance or retribution, but to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society. We discipline a judge to reassure the public that judicial misconduct is neither permitted nor condoned.

*In re Kneifl,* 217 Neb. 472, 351 N.W.2d 693, 700 (1984). When dealing with judicial misconduct, the sanction or sanctions should fit the offense. In determining the appropriate level of sanction to impose for judge's misconduct, the Review Tribunal is

obligated to consider the underlying purpose of judicial discipline, which is to protect not only the third branch of government, but also the sovereign which it serves, i.e., the citizens of the State of Texas, from unacceptable judicial behavior. In adopting the above measure and purpose for the imposition of judicial discipline, we are not oblivious to the fact that a standard may be set for the judiciary that few "ordinary" citizens of this State can live up to. A citizen who serves as a member of the judiciary of the State of Texas is among a chosen few who no longer enjoys the role of an "ordinary" citizen. It is for that reason, among others, that a judge who is a standard-bearer of fairness and impartiality in our society is no longer addressed as Ms., Mrs., or Mr., but rather as "Your Honor."

After careful review, we find that the evidence is legally and factually sufficient to support each and every paragraph, charge and item of the findings and conclusions of the State Commission on Judicial Conduct, save and except those portions of Respondent's Point of Error No. One which pertain to preventing counsel from approaching the bench, and which pertain to "Behavior Toward Those with Whom a Judge Interacts in a Judicial Capacity." As to all other contentions which we have overruled, we find that Respondent has violated Canons 2A, 3B(3), 3B(4) and 3B(8) of the Texas Code of Judicial Conduct and Article V, § 1–a(6)A of the Constitution of the State of Texas. Although we have sustained Respondent's challenge to the Commission's findings as to persistent conduct, we note that such error is harmless, given the fact that the Texas Constitution authorizes removal in the instant case for either willful or persistent violation of the Texas Code of Judicial Conduct. TEX. CONST. art. V, § 1–a(6)A (1993) [emphasis added]. We have found his conduct to be willful, as defined, and in some instances, done in bad faith.

We sustain those portions of Respondent's Point of Error No. One which relate

to "Behavior Toward Those with Whom a Judge Interacts in a Judicial Capacity," and to his preventing counsel from approaching the bench. We further sustain that portion of Respondent's Point of Error No. Four which relates to Respondent's persistent conduct, as alleged. We find any error harmless. We overrule all of Respondent's remaining contentions on review, and affirm the recommendation of the State Commission on Judicial Conduct that Respondent be sanctioned. We accept the recommendation that Respondent, James L. "Jim" Barr be removed as Judge of the 337th Judicial District Court of the State of Texas, however, we reject that portion of the recommendation which would forever ban Respondent from holding judicial office.

## JAMES L. "JIM" BARR IS HEREBY REMOVED AS JUDGE OF THE 337ᵀᴴ JUDICIAL DISTRICT COURT OF THE STATE OF TEXAS.

HOLMAN, Justice, concurring and dissenting.

I concur in the Tribunal's opinion and judgment ordering Respondent's removal from judicial office. I respectfully dissent only to the extent that the opinion and judgment do not also preclude Respondent's eventual return to judicial office. The record in this case persuasively compels a judgment that not only removes Respondent from judicial office now but also prohibits him from holding judicial office in the future and from sitting as a judge on a court of this State by assignment. *See* TEX. CONST. art. 5, § 1–a (6)(C).

Unrefuted evidence portrays Respondent presiding in open court on the occasions specified in the complaint against him, acting in a manner clearly inconsistent with a decorous and dignified performance of judicial duties as he willfully made lewd, vulgar, and demeaning remarks and gestures to female attorneys. Plainly, that style of conduct has been a hallmark of Respondent's judicial demeanor and temperament. When oral argument of this case was presented to the Tribunal, that particular conduct was alluded to as sexual harassment, a characterization that Respondent did not disavow. However, the Tribunal's opinion makes clear that the question of whether the conduct meets a legal definition of sexual harassment is not before us, for the behavior simply violates Texas Code of Judicial Conduct Canons 3B (3), (4), and (6).

Respondent's willfulness in that conduct at the times specified in the complaint and found by the Commission to have occurred displayed his gross indifference to whether any of the women, whose litigation was subject to his rulings, thought his behavior offensive or intimidating. Such behavior by a judge, holder of a judicial office symbolic of honor and justice, debases any courtroom proceeding where the conduct occurs. Respondent concedes that he also made vulgar remarks to female attorneys during a social event outside of court. And whenever and wherever a judge's public demeanor includes instances of vulgar behavior like that complained of in this case, it tarnishes not only the offending judge, it effectively casts public discredit upon the judiciary and the administration of justice. More than two decades ago, the Texas Supreme Court acknowledged that public disrespect for judicial office and the judiciary in general may be caused by a judge's willful or persistent intemperate personal conduct whether on or off the bench. *See Matter of Carrillo*, 542 S.W.2d 105, 111 (Tex.1976).

Respondent asserts that he no longer makes vulgar and demeaning remarks or gestures to female attorneys in court or at social events out of court and that he will not act that way in the future. Nevertheless, during oral arguments before this Tribunal, Respondent conceded and the parties stipulated that the instant case is not the first time a complaint has been filed at the Commission against him for

using vulgar language while presiding in open court. An earlier case that was grounded upon complaints about Respondent's profane and vulgar remarks to probationers appearing in his court, ended in 1994 when the Commission issued Respondent a Private Warning that "words of profanity or vulgarity are not appropriate for the bench in open court." The evidence in the current case demonstrates that Respondent did not heed the warning.

Accordingly, I respectfully submit that the Tribunal's judgment in this case should not only order Respondent's removal from judicial office, it also should prohibit him from holding judicial office in the future and from sitting by assignment as a judge on a court of this State.

WRIGHT, J., joins in this concurrence and dissent.

## OPINION ON REHEARING

BARAJAS, Chief J.

We grant Respondent James L. "Jim" Barr's Motion for Rehearing in order to address constitutional concerns and other matters properly preserved for review.

### A. Procedural History on Rehearing

On March 2, 1998, Respondent filed his Motion for Rehearing of the Review Tribunal's Findings and his Motion to Supplement the Record. A Motion for Rehearing may be filed within fifteen (15) days of the date of judgment unless the Review Tribunal directs in its judgment that such a motion will not be entertained. *See* Tex.R. Rem'l/Ret. Judg., 56 Tex.B.J. 823 (1993), Rule 14. Respondent asserted that he did not waive the constitutional challenges, as they were properly raised before the Special Master during a proceeding on March 10, 1997. Respondent sought to supplement the record with the transcript of that March 10th proceeding. The Examiner filed its response to both motions on March 13, 1998 and did not oppose Respondent's Motion to Supplement the Record. However, the Examiner did oppose Respondent's Motion for Rehearing on the ground that the supplementation of the record in no way affected the Review Tribunal's analysis and conclusion regarding preservation of his constitutional arguments.

On April 3, 1998, Respondent filed his First Amended Motion for Rehearing and Request for Remand to make Conclusions of Law. Respondent argued that Rule 16 of the Texas Rules for the Removal or Retirement of Judges required the Commission to make both findings of fact and conclusions of law with respect to the issues of fact and law in the proceedings. Tex.R. Rem'l/Ret. Judg., Rule 16. On April 22, 1998, the Review Tribunal issued an order requesting a response to the aforementioned motion. On May 6, 1998, the Examiner filed its Response to Respondent's First Amended Motion for Rehearing and Request for Remand to make Conclusions of Law. The Examiner argued that the Commission in fact made Conclusions of Law, that Respondent failed to preserve the constitutional claims for review, and that supplementing the record with the transcript did not cure Respondent's failure to preserve error. The Examiner also asserted that no basis for remand existed since no precedent supported it and "good cause" had not been shown as required by Tex.R. Rem'l/Ret. Judg., Rule 12(f).[1]

On May 28, 1998, Respondent filed his Reply to Examiner's Response to Respondent's First Amended Motion for Rehearing and Request for Remand to make Conclusions of Law. Respondent argued that the recent opinion *In re Lowery*, 999 S.W.2d 639 (Tex.Rev.Trib. 1998, pet.de-

---

1. Rule 12(f) provides that "[t]he Review Tribunal, may, in its discretion and for good cause shown, permit the introduction of additional evidence, and may direct that the same be introduced before the Special Master or the Commission and be filed as part of the record in the court."

nied) specifically reserved the right to a remand if necessary. Respondent also argued that the Rules of Appellate Procedure, under which the Review Tribunal operated, clearly allow a remand. *See* Tex.R.App.P. 43.3(a). As discussed in the original opinion, the civil rules of procedure, both trial and appellate, are applicable, to the extent that they do not conflict with the RULES FOR REMOVAL OR RETIREMENT OF JUDGES. TEX.R. REM'L/RET. JUDG., Rules 10(d)(1), 12(e), and (g). On July 29, 1998, the Review Tribunal took the following action:

1. Granted Respondent's Motion to Supplement the Record;
2. Granted Respondent's Motion for Rehearing on the constitutional issues, including the question of the applicability of the "Forgiveness Doctrine;"
3. Granted the Examiner's unopposed Motion to Supplement the Record;
4. Abated and remanded the matter to the Commission for consideration of the constitutional issues raised by the supplemental record;
5. Ordered that no action be taken on the Respondent's Motion for Continuance insofar as the matter had been abated and remanded to the Commission;
6. Ordered that the Commission's conclusions of law as to the constitutional issues raised in the supplemental record, including the question of the applicability of the "Forgiveness Doctrine," be filed with the Review Tribunal on or before October 30, 1998, so as to fully afford the Commission sufficient opportunity to schedule and hear oral argument and otherwise comply with due process.

The Commission filed its Supplemental Conclusions of Law on August 6, 1998. On August 27, 1998, Respondent filed his Objections to the Supplemental Conclusions of Law (along with his Response to the Examiner's Response to Respondent's Request for Oral Argument and Opportunity to Brief Issues of Constitutional Dimensions). On September 2, 1998, the Review Tribunal issued an order overruling Respondent's requests to rebrief and to orally argue before the Commission and ordered the parties to brief the issues regarding the Commission's Supplemental Conclusions of Law. Finally, on September 21, 1998, Respondent filed his brief and on October 1, 1998, the Commission filed its Reply Brief.

## B. Discussion on Rehearing

Having properly supplemented the record to accurately reflect the proceedings before the Special Master, Respondent, on Rehearing, properly presents the following issues:

1. Respondent objects to the Commission's Supplemental Conclusion of Law No. One because the constitutional provisions do not give proper notice and fair warning to those to whom they are directed. Respondent further objects that the provisions contain vague and indefinite phrases that deny due process of law;

2. In response to the Commission's Supplemental Conclusions of Law Nos. Five and Six, Respondent contends that the Forgiveness Doctrine applies;

3. Respondent objects to the Commission's Supplemental Conclusion of Law No. Seven. Respondent maintains that the Texas Government Code requires the Commission to publish its annual report; and

4. Respondent objects to the Commission's Supplemental Conclusion of Law No. Eight, complaining that his due process rights have been violated since he was denied the opportunity to make an oral argument before the Commission regarding the constitutional issues.

**564**

### 1. Challenges of "Vague and Overbroad".

In Point of Error No. One on Rehearing, Respondent objects to the Commission's Supplemental Conclusion of Law No. One because the constitutional provisions do not give proper notice and fair warning to those to whom they are directed. Respondent further contends that the constitutional provisions contain vague and indefinite phrases that deny due process of law.

The Commission's Supplemental Conclusion of Law No. One stated as follows:

The following provisions of the Texas Constitution and of the Code of Judicial Conduct are not unconstitutionally vague or overbroad, either on their face or as applied to Judge Barr's conduct:

1. Article V, Section 1–a(6)A of the Texas Constitution.

2. Code of Judicial Conduct, Canon 2A.

3. Code of Judicial Conduct, Canon 3B(3).

4. Code of Judicial Conduct, Canon 3B(4).

5. Code of Judicial Conduct, Canon 3B(6).

6. Code of Judicial Conduct, Canon 3B(8).[2]

While vagueness and overbreadth doctrines are generally used to challenge the validity of laws defining criminal conduct, the prohibitions against vagueness and overbreadth also extend to regulations affecting conditions of government employment. *In re Lowery,* 999 S.W.2d 639 (Tex. Rev.Trib. 1998, pet.denied) (citing *In the Matter of Seraphim,* 97 Wis.2d 485, 294 N.W.2d 485, 492 (1980)). It appears from the cases which have addressed the question of unconstitutional vagueness in this context that a greater degree of flexibility is permitted with respect to judicial discipline than is allowed in criminal statutes. *Id.* (citing *In the Matter of Seraphim,* 294 N.W.2d at 492). The constitutionality of necessarily broad standards of professional conduct has long been recognized. *Id.* (citing *In re Gillard,* 271 N.W.2d 785, 809 (Minn.1978)).

A statute may be successfully challenged as vague if it does not clearly define the conduct regulated, and thus does not afford an individual fair warning of what conduct is prohibited. *Halleck v. Berliner,* 427 F.Supp. 1225, 1240 (D.D.C. 1977). Moreover, a statute which clearly

---

2. The provisions which Respondent contends are vague or overbroad are as follows:
1. Article V, Section 1–a(6)A of the Texas Constitution, providing in pertinent part that a judge may be disciplined, censured, or removed from office "for willful or persistent violation of rules promulgated by the Supreme Court of Texas, incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful and persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice...."
2. Canon 2A of the Texas Code of Judicial Conduct—"A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
3. Canon 3B(3) of the Texas Code of Judicial Conduct—"A judge shall require order and decorum in proceedings before the judge."

4. Canon 3B(4) of the Texas Code of Judicial Conduct—"A judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity...."
5. Canon 3B(6) of the Texas Code of Judicial Conduct—"A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not knowingly permit staff, court officials and others subject to the judge's direction and control to do so."
6. Canon 3B(8) of the Texas Code of Judicial Conduct—"A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law...."

defines the conduct regulated may be unconstitutionally overbroad if it includes protected conduct within its prohibitions. *Id.* A statute is not necessarily invalid as vague or overbroad merely because it is difficult to determine whether marginal conduct falls within the statutory language. *Id.*

Arguments in other jurisdictions that constitutional and statutory provisions for the discipline of judges were vague or overbroad have been consistently rejected on the ground that the Code of Judicial Conduct furnished sufficient specification of the judicial conduct which warrants disciplinary action. *Id.* Statutes and constitutional provisions which define in similarly broad terms the grounds for removal of judges from office have been upheld in *In re Lowery,* 999 S.W.2d 639 (Tex.Rev.Trib. 1998, pet.denied); *Napolitano v. Ward,* 317 F.Supp. 79 (N.D.Ill.1970) ("for cause"); *Keiser v. Bell,* 332 F.Supp. 608 (E.D.Pa. 1971); *Halleck v. Berliner,* 427 F.Supp. 1225 (D.D.C.1977); *In re Nowell,* 293 N.C. 235, 237 S.E.2d 246 (1977); *Nicholson v. Judicial Retirement and Removal Comm.,* 562 S.W.2d 306 (Ky.1978); and *In re Gillard,* 271 N.W.2d 785 (Minn.1978).

In light of these decisions, we find no merit in Respondent's contention that the standards he was found to have violated are unconstitutionally vague. While the Canons challenged in this matter may proscribe some speech and conduct which, for other persons in other circumstances, could not be constitutionally proscribed, Respondent's contention that they are unconstitutionally overbroad must be and is rejected. It is well established that judges, in company with other public servants, must suffer from time to time such limits on these rights as are appropriate to the exercise in given situations of their official duties or functions. *In re Lowery,*

999 S.W.2d 639 (Tex.Rev.Trib. 1998, pet.denied). The limitations imposed by the rules are made necessary by the very nature of the task which a judge seeks to perform. The citizens of the State of Texas ask nothing more, and expect nothing less. Respondent's Point of Error No. One on Rehearing is overruled.

### 2. Applicability of Forgiveness Doctrine

In Point of Error No. Two on Rehearing, Respondent contends that the Forgiveness Doctrine is applicable. Given our discussion and disposition of Respondent's identical arguments on original submission, we overrule Respondent's Point of Error No. Two on Rehearing.[3]

### 3. Commission's Failure to Publish Its Annual Report

In Point of Error No. Three on Rehearing, Respondent contends that the Texas Government Code requires the Commission to publish its annual report. Once again, given our discussion and disposition of Respondent's identical arguments on original submission, we overrule Respondent's Point of Error No. Three on Rehearing.

### 4. Denial of Opportunity to Make Oral Argument Before Commission

In Point of Error No. Four on Rehearing, Respondent contends that his due process rights have been violated since he was denied the opportunity to make an oral argument before the Commission regarding the constitutional issues addressed above. We disagree.

Absent a statement of objections to the report of the Special Master, the Commis-

---

**3.** We of course note that on original submission, we found that Respondent's claim as to the Forgiveness Doctrine was being raised for the first time on appeal. However, as noted earlier, we have granted supplementation of the record and now note that the issue was in

fact raised and preserved for review. Accordingly, we withdraw that portion of the Tribunal's opinion on original submission as it pertains to his waiver of the "Applicability of the 'Forgiveness Statute.'"

sion may adopt the findings of fact of the Special Master as its own. *In re Thoma,* 873 S.W.2d 477, 485 (Tex.Rev.Trib.1994, no appeal); TEX.R. REM'L/RET. JUDG., Rule 10(j). The findings of the Special Master, as adopted by the Commission, are tantamount to findings of fact filed by a trial judge in a trial without a jury, and as a result, are reviewed in that light. *Thoma,* 873 S.W.2d at 485. In the instant case, Respondent did in fact file objections to that report. If a statement of objections is filed, the Commission **shall** give the judge and the examiner the opportunity to be heard orally before the Commission. TEX.R. REM'L/RET. JUDG., Rule 10(j) (emphasis supplied).

The record in the instant case demonstrates that upon proper supplementation, this Review Tribunal abated and remanded the cause to the Commission for entry of supplemental findings of fact and conclusions of law. No findings of fact were made by the Special Master or the Commission as to the constitutional issue complained of on review, nor were any requested. The Commission did however make its Supplemental Conclusion of Law No. Eight, noting that "Judge Barr has been accorded due process of law under the United States and Texas Constitutions, Chapter 33 of the Texas Government Code, and the Procedural Rules for the Removal or Retirement of Judges."

The extensive record in the instant case includes a reporter's record, both on original submission and on supplementation. As noted, we review the Commission's adopted findings of fact for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the legal and factual sufficiency of the evidence supporting findings in a civil case, either by a trial court or by a jury. *Thoma,* 873 S.W.2d at 485. If the Commission's adopted findings of fact are supported by the evidence, given the standards set forth above, they are binding on this Review Tribunal. *See County of El Paso v. Ortega,* 847 S.W.2d 436, 441 (Tex. App.—El Paso 1993, no writ). On the other hand, this Review Tribunal's review of the Commission's Conclusions of Law are reviewable *de novo. Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.).

We have once again reviewed the entire record in the instant case, both on original submission and on subsequent supplementation, and find that Respondent was not entitled to present oral argument before the Commission regarding the constitutional issues presented, since no findings of fact were made by the Special Master as to the complained-of issue, or later by the Commission. Respondent's complaint is, in actuality, directed to the Commission's Supplemental Conclusion of Law No. Eight, which is reviewable *de novo* by this Review Tribunal in any event. Given our disposition of Respondent's constitutional issues, Respondent's Point of Error No. Four on Rehearing is overruled.

Respondent's Motion for Rehearing is overruled in its entirety.